[Civ. No. 7480. First Appellate District, Division Two.—April 28, 1931.]

LOUELLA TAYLOR, Respondent, v. MELVILLE LOW-ENSTEIN, Appellant.

666

W. G. McKeen and George M. Naus for Appellant.

Hugh L. Smith and Charles J. Wiseman for Respondent.

SPENCE, J.—This is an action for personal injuries. Upon a trial by jury plaintiff recovered a judgment for $7,500, from which judgment defendant appeals.

Appellant's first contention is that the verdict is so excessive as to indicate passion or prejudice on the part of the jury. A review of the evidence convinces us that this contention is without merit. Prior to the accident respondent was a healthy, robust woman of the age of fifty-four years. She had been a professional nurse for thirty-five years and from that work she had an average monthly income of $160 per month. The accident occurred on the Pacific highway near Cottonwood on June 16, 1928. The force of the impact threw respondent from the automobile she was driving into a water ditch adjoining the highway. When she recovered consciousness she was pinned under the machine in mud and water with a portion of the machine across her hips. Respondent did not suffer any broken bones, but in addition to lacerations and contusions her major injuries consisted of concussion of the brain and nerve injury. The lacerations and contusions themselves were of a serious nature. She was "black and blue from head to foot and skin was knocked off her body in patches

as large as your hand". One wound on the back of her head was approximately three inches in length, about one-half inch in depth and extended down to the bone. Her physician in San Francisco found this wound to be dirty and badly ·infected and treated it over a ·period of time. He enumerated the symptoms upon which he based his diagnosis of concussion˙ of the brain. They included constant pain in the head, inability to sleep, physical and mental weakness, ringing in the ears, lack of memory, inability to concentrate or think of the words she wanted. He stated that she had "all the typical and classical symptoms of concussion of the brain". The ·nerve injury was evidenced by extreme tenderness and pain around the tenth, eleventh and twelfth dorsal vertebrae. The nerves emanating from there are largely those of "the region of the sciatic. Her numbness was principally in the left leg." Respondent remained in San Francisco until August, 1928. She had a nurse for eight days and was thereafter cared for by her daughter. Her physician did not attempt to treat her for the concussion or nerve injury as "nature has to attend to the cure of those things". Respondent was compelled to abandon her contemplated return to work in Ventura. In August, 1928, she left San Francisco for the state of Washington, where she remained with another daughter until shortly before the trial in January, 1930. According to the testimony of respondent and her physician, she was incapacitated during this entire period. Her testimony showed that her pains in the head and in the spinal region were almost continuous, dull at times and sharp at other times. She had fainting spells, one of which lasted about six hours. For several months she did not awaken naturally from sleep, but was awakened by the application of water to her face. For eight months she slept in a chair instead of a bed. During part of the time she was unable to walk alone and the injury to her hip evidenced itself by a catch in her step. She had considerable difficulty in sitting down and arising and also experienced difficulty in breathing. At the time of the trial, over a year and a half after the accident, she was still suffering with pains in the head and the region of the hips and was incapable of any sustained standing on her feet or of lifting objects. She was unable to do housework and many

other things which she had been accustomed to doing. Her physician examined her shortly before the trial and testified that as a result of these injuries she was still incapable of resuming her work as a nurse. He could not state whether the injury would be permanent. He said: "The injury may be permanent, it may be temporary. You cannot say in advance how long the injury to the nerve cells will last. It may last as long as she lives." Only one other medical witness testified. He specialized as an orthopedist and conceded on cross-examination that he was not qualified to answer any questions relating to concussion of the brain.

This action was brought to recover both general and special damages. In addition to the loss of earnings prior to the trial amounting to approximately $2,800, respondent showed further special damage in the sum of $163. This leaves approximately $4,500 as the portion of the verdict awarded as general damages.

Counsel for appellant calls our attention to the fact that the only objective signs of the injuries at the time of the trial were certain scars which were not prominent, and that everything else was subjective. Even though this be conceded, it does not follow that the judgment should be set aside as excessive. Medical science and human experience teach us that the extent of personal injuries cannot be measured solely by objective signs. Injuries of traumatic origin may leave few, if any, outward signs and yet a severe concussion of the brain or injury to the nervous system may result in far greater and more lasting pain and disability than do many types of injuries which are plainly visible. As was said in *Johnson* v. *Pearson,* 100 Cal. App. 503, at page 507 [280 Pac. 394, 396]: "It is also a fact, well within human experience, that suffering from the disruption of the nervous system of the human body may be, and often is, more intense and severe than most any other form of suffering."

No doubt counsel for appellant is not convinced of the truth of all of the testimony offered on behalf of respondent, but this matter has been passed upon by the jury and thereafter by the trial court on motion for new trial. It is not the province of this court to pass upon this question. We may observe, however, that in these cases where the

conclusions of medical experts are based largely upon the statements of the injured person, the trial court has an exceedingly important function to perform in passing upon the motion for new trial. The symptoms of nervous disorders may often be feigned, particularly where a willing patient who is asking for damages has the assistance of a willing expert. We have reason to believe that these symptoms are frequently exaggerated either for the purpose of magnifying the apparent severity of the injuries or for the purpose of demonstrating their apparent continued existence long after the cause has gone. If the trial court, after observing and hearing the testimony of the injured person and other witnesses, is convinced that the jury has been imposed upon, it should not hesitate to act accordingly. However, in the present case we must assume that the trial court was impressed with the truth of the testimony offered by respondent and no doubt is cast thereon by the record. The evidence offered by respondent showed that she had experienced and was still experiencing severe and prolonged suffering and disability as the result of her injuries and this evidence amply sustained the award.

Appellant further contends that prejudicial error resulted from the giving of certain instructions relating to damage. The trial court's instructions on the issue of damage might be termed "stock instructions" and they fully and correctly stated the law as is conceded by appellant. Among these were certain instructions advising the jury that they might consider whether the injuries, if any, were temporary or permanent in character and also the damages, if any, which they might find from the evidence that respondent was reasonably certain to suffer in the future. It is true, as contended by appellant, that the evidence was insufficient to show that it was reasonably certain that the injuries would be permanent in character. Her physician testified that he could not state whether the injuries would be permanent or temporary. The testimony did show, however, that respondent had suffered continuously from these injuries for over a year and a half and was still suffering and disabled at the time of the trial. Such testimony was sufficient to indicate with reasonable certainty that the pain and disability would continue for a period of time thereafter. We are of the opinion that there was no prejudicial

error in these instructions, particularly in view of the fact that the evidence of damage suffered up to the time of the trial was sufficient to sustain the award and the further fact that the size of the award does not indicate that it was based upon a finding that the suffering and disability would continue throughout the remainder of respondent's life.

It is further contended by appellant that the instructions on imminent peril should not have been given as they were inapplicable. In our opinion this contention cannot be sustained. The accident occurred while appellant was speeding up and endeavoring to pass respondent's car, which was going in the same direction. We deem it unnecessary to state in detail the testimony of various witnesses. Under certain versions of the circumstances surrounding the accident, the doctrine of imminent peril might have been applied by the jury to the conduct of either driver. The instructions correctly stated the law, were applicable under the evidence, and were equally as favorable to appellant as to respondent.

The judgment is affirmed.

Nourse, P. J., and Sturtevant, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 28, 1931, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 25, 1931.