[Civ. No. 12690.   First Dist., Div. Two.   Oct. 10, 1944.]

KEE COLEMAN et al., Respondents, v. JOHN GALVIN, Appellant.

J. Frank Murphy and Chester R. Andrews for Appellant.

Athearn, Chandler & Farmer, Phillip H. Angell and Earl C. Berger for Respondents.

SPENCE, J.—Plaintiffs, who are husband and wife, sought damages for personal injuries sustained when the automobile

driven by defendant collided with the automobile in which plaintiffs were riding. A trial by jury resulted in the entry of judgment in favor of plaintiff Kee Coleman in the sum of $16,000 and in favor of plaintiff Clare Coleman in the sum of $4,000. Defendant appeals from said judgment.

The record discloses that the defense in the trial court was assumed by counsel chosen by defendant's insurance carrier. After taking the appeal, the insurance carrier served and filed a "Notice of Deposit and Settlement and Tender." The carrier gave notice thereby that it deemed it inexpedient to proceed further with the appeal and gave notice of its deposit in a bank and its tender of approximately $12,000 to meet its obligations up to the limits of its policy. Partial satisfaction of judgment was entered for the amount received by plaintiffs and the appeal was thereafter prosecuted by counsel chosen by defendant personally.

The sole contention of defendant on this appeal is that the judgment should be reversed because the damages awarded were excessive. It is therefore unnecessary to set forth the facts surrounding the happening of the accident except insofar as such facts may throw light upon plaintiffs' injuries. It is sufficient to state that the evidence showed that defendant drove his automobile in such manner and at such speed as to cause a head-on collision with plaintiffs' automobile thereby hurling the latter backwards for a distance of forty feet from the point of impact. Plaintiffs' bodies were thrown about in their car with such force as to bend metal parts and to smash the windshield. The front seat was "jarred loose" and the steering post and wheel were "all bent out of shape." This evidence, showing the terrific force of the impact, was no doubt considered by the jury, together with the medical testimony, in determining the extent and severity of plaintiffs' injuries including nervous shock.

At the time of the accident, Mr. Coleman was a man 62 years of age. He was in good physical condition except for some difficulty which he had experienced with angina pectoris. This had been brought under control by the usual methods and he had actively engaged in business and also in sports such as golf, riding horses, fishing and hunting. Mr. and Mrs. Coleman were engaged in the photography business, which business had been built up over the years to the point where it produced a net income of $50,000 per year. They had studios in San Francisco and Sacramento and they employed

from 18 to 30 persons depending upon the season of the year. Both were actively engaged in the business on a full time basis and were also actively engaged in social and recreational affairs designed to entertain their patrons and to promote business through new contacts. The business was in an exceedingly prosperous condition at the time that the accident occurred on October 3, 1942. Since that time, neither Mr. nor Mrs. Coleman has been able to carry on business or social activities in the customary manner. The resulting disability to Mr. Coleman was far greater than that to Mrs. Coleman who resumed her business activities shortly after the accident on a part time basis. While their business continued to prosper, due largely to the general prosperity experienced by the photography business in these times, there can be no doubt that the earning capacities of both plaintiffs, and particularly the earning capacity of Mr. Coleman, had been seriously impaired as a result of the injuries received.

Defendant makes much of the fact that there were no serious fractures of the bones in plaintiffs' bodies. He also calls attention to the fact that the remaining signs of the injuries at the time of trial, which was held one year later, were largely subjective rather than objective. From these facts he argues that only very small awards would have been justified and that the actual awards were therefore excessive. While the facts to which defendant refers have some significance, they are not conclusive. As we said in *Taylor* v. *Lowenstein*, 113 Cal.App. 665 at page 668 [298 P. 847], ''Counsel for appellant calls our attention to the fact that the only objective signs of the injuries at the time of the trial were certain scars which were not prominent, and that everything else was subjective. Even though this be conceded, it does not follow that the judgment should be set aside as excessive. Medical science and human experience teach us that the extent of personal injuries cannot be measured solely by objective signs. Injuries of traumatic origin may leave few, if any, outward signs and yet a severe concussion of the brain or injury to the nervous system may result in far greater and more lasting pain and disability than do many types of injuries which are plainly visible. As was said in *Johnson* v. *Pearson*, 100 Cal.App. 503 at page 507 [280 P. 394, 396] : 'It is also a fact, well within human experience, that suffering from the disruption of the nervous system of the human body

may be, and often is, more intense and severe than most any other form of suffering.' ''

In the light of what has been said, we turn first to a consideration of the damages sustained by Mr. Coleman as a result of his injuries. While both parties were severely bruised and lacerated and were hospitalized and treated for varying lengths of time, we shall discuss only the more serious injuries. Among the serious injuries suffered by Mr. Coleman were a damaging concussion of the brain together with severe nervous shock. These injuries resulted in nervousness, irritability, sleeplessness, inability to concentrate, forgetfulness, loss of memory, inability to work for any length of time and quick fatigue followed by "blinding, staggering" headaches and pains in the back of the neck which were relieved only by rest. It appeared that these resulting conditions were getting progressively worse. Mr. Coleman attempted to resume work on a part time basis some time after the accident but was unable to continue. During the months of May and June, 1943, he went to his studios not more than three times and in the four succeeding months, which immediately preceded the trial, he was unable to work at all. In addition, Mr. Coleman sustained a jagged laceration of the left forehead with arterial bleeding, which laceration was stitched but thereafter became infected leaving a large scar. He also sustained a fractured rib with a permanent nodule on his body at the site of the fracture, which nodule was about the size of the body of a mouse. There was abundant testimony of an entire change of Mr. Coleman's personality following the accident. He had lost twenty pounds in weight. There was also testimony that Mr. Coleman's heart condition had been aggravated by his injuries. The jury was entitled to conclude from the testimony that the injuries which he received in the accident were serious and permanent in nature and that he would be prevented thereby from resuming his normal activities even on a very limited basis for at least some time to come. Defendant does not seriously question the testimony concerning Mr. Coleman's condition at the time of the trial but he argues that this condition was attributable to his age and preexisting heart condition rather than to the injuries sustained in the accident. Suffice it to say that there was ample evidence to show that the serious condition which developed after the accident was the result of the injuries sustained.

Mrs. Coleman likewise suffered a head injury with nervous shock but the resulting disability was not so great as that experienced by Mr. Coleman. In the accident, Mrs. Coleman's head and arm crashed through the windshield and she suffered a compound fracture of the bones of the nose with fragments of glass remaining embedded in the lacerations. She was cut about the head, arms and legs and was badly bruised. The force of the impact broke Mrs. Coleman's right shoe open and her great right toe was displaced. Her head and hand were stitched and scars remained at the time of the trial. There remained a depression between her eyes where the nose was stitched and also a swelling at the site of the fracture which caused an obstruction and made breathing difficult. At the time of the trial, the doctor recommended an operation to straighten the bone, eliminate the obstruction and to alleviate a mucous discharge which he believed was responsible for the headaches from which she was suffering. She was also still suffering from her foot injury with "tenderness about the joint, pain and inability to completely flex the toe" and with "a prominence of the bone about the joint." She was unable to stand on her feet for the periods of time required in her work and was unable to dance or to wear the high heeled shoes to which she was accustomed. She was compelled to wear corrective shoes with low heels. This foot injury was characterized as permanent. A misplaced vertebra in her neck continued to cause considerable discomfort despite osteopathic treatments which she had received for this condition. Mrs. Coleman was actually hospitalized for only eleven days following the accident and she then attempted to resume some of her supervisory duties on a part time basis. Up to the time of the trial, she had been unable to work, however, for more than one-third of the time which she had previously devoted to the business.

The foregoing presents a brief summary of the testimony relating to the injuries and disabilities resulting from the accident but we believe such summary is adequate for the purposes of this discussion with the additional observation that it appeared that plaintiffs had sustained special damages in the sum of approximately $2,000. From what has been said it appears that the jury could have properly concluded that plaintiffs had suffered serious injuries; that some of said injuries were of a permanent nature; that said injuries had greatly disabled plaintiffs during the year following the acci-

dent; that it was reasonably certain that said injuries would continue to disable plaintiffs in the future and that further treatment would be required; and that as a result of said injuries, the earning capacities of plaintiffs, and particularly the earning capacity of plaintiff Kee Coleman, had been seriously and permanently impaired.

The rule governing appellate courts in such cases was clearly stated in the early case of *Morgan* v. *Southern Pacific Co.,* 95 Cal. 501 [30 P. 601] in which a judgment of $15,000 was affirmed despite the facts that "no bones were broken, and there was but little external evidence of injury." As was said in that case at page 508, "The great difficulty in the present case is determining the extent of plaintiff's injuries—or rather, what conclusion the jury had the right to arrive at from the evidence as to the extent of those injuries." The court quoted the rule, as stated in the earlier case of *Aldrich* v. *Palmer,* 24 Cal. 513, where it was said that a judgment should not be disturbed on appeal "unless the amount of the damages is obviously so disproportionate to the injury proved as to justify the conclusion that the verdict is not the result of the cool and dispassionate consideration of the jury." The same rule, in somewhat different words, is stated in the late case of *Koyer* v. *McComber,* 12 Cal.2d 175 [82 P.2d 941], where the court said at page 182, that the judgment should not be disturbed on appeal "except upon a showing that it is so grossly disproportionate to any reasonable view of the evidence as to raise a strong presumption that it is based upon prejudice or passion."

Defendant cites numerous cases but we find none of the cited cases controlling here as each case must stand upon its own particular facts as disclosed by the evidence. Said cases may be distinguished on one or more of the following grounds: That no serious injury had been sustained; that little, if any, hospitalization or treatment had been required; that no further treatment would be required in the future; that only slight, temporary disability had resulted; and that little or no permanent disability or loss of earning capacity had been shown. Under the rules stated in the authorities cited above, we are of the opinion the jury's awards in the present case cannot be disturbed on this appeal.

The judgment is affirmed.

Nourse, P. J., and Goodell, J. pro tem., concurred.