[Civ. No. 7514.   Third Dist.   Apr. 2, 1949.]

J. E. MUSIC et al., Respondents, v. SOUTHERN PACIFIC COMPANY (a Corporation) et al., Appellants.

Glenn D. Newton and Frank W. Shuman for Appellants.

L. C. Smith and John A. Spann for Respondents.

PEEK, J.—J. E. Music and Mariah Music, husband and wife, brought this action to recover damages for personal injuries in a collision between an automobile driven by the husband Mr. Music, in which his wife was riding, and a passenger train of the defendant Southern Pacific Company. Defendants C. B. Frizelle and George Belsky were, respectively, the engineer and fireman on the train involved.

The collision, as alleged in the complaint, occurred on January 24, 1946, at a place referred to as Black Lane Crossing, located approximately 1 mile north of the town of Cottonwood in Shasta County. It was further alleged that defendants were negligent in that they had permitted trees and brush

to grow along the portion of the right of way immediately north and south of the crossing so as to obstruct the vision of persons crossing the track; that defendants permitted the road and road bed at the crossing to become full of holes and otherwise in a state of disrepair; that defendants failed to provide a signalman or automatic signaling device, and that defendants negligently operated the train. The complaint concluded with the allegation that the collision occurred as the proximate result of such negligence and that the plaintiffs thereby sustained the injuries for which this action was brought to recover damages.

Defendants' answer denied the allegations as to their negligence and affirmatively alleged that plaintiffs' injuries were the proximate result of their own contributory negligence. The case was tried before a jury on the issues so raised and resulted in verdicts in favor of the plaintiffs upon which judgment was entered and from which defendants have taken this appeal. Defendants' motion for a new trial was denied as was their previous motion for a directed verdict.

Appellants raise three points on this appeal: (1) that plaintiffs were guilty of contributory negligence as a matter of law and the trial court erred in denying defendants' motion for a directed verdict, (2) that plaintiffs' counsel were guilty of persistent, wilful and highly prejudicial misconduct, and (3) that the verdicts were given under the influence of passion and prejudice.

The evidence in regard to the alleged contributory negligence of the respondents discloses that Black Lane is a county road running in a general east-west direction and is between 12 to 13 feet wide. The railroad track runs approximately north and south and the main track is straight for more than a mile north of the crossing. A siding track parallels the main track at the crossing some 14 feet to the east of the main track. Both tracks are elevated on a fill approximately 4 feet high necessitating an incline in the road crossing the tracks which amounted to a 6.67 per cent grade to the fill from a point 32 feet to the east of the center line of the siding track. There is no wigwag or other warning device at the crossing except the customary railroad crossing sign. The testimony concerning the condition of the surface of the crossing was conflicting as was the testimony concerning the obstructed view of the tracks by reason of trees, poles, and brush along the right of way.

Mr. Music testified that he approached the crossing from the east; that he stopped his truck at the bottom of the incline leading to the fill on which the tracks were located and looked to the north and south but that he could only see some 150 feet because of obstructions to his vision consisting of trees and brush along the right of way; that he then shifted into low gear and proceeded up the incline at a speed of approximately 5 miles per hour and again looked to the north for approaching trains but still could only see approximately 150 feet. He further testified that he did not look again after he reached the easternmost or siding track; that his attention was directed to the operation of his truck across the track so as to avoid the holes and rough spots in the pavement and that at no time did he see or hear the train approaching from the north with which he collided. The testimony of Mrs. Music which was in substantial accord with that of her husband was that she neither saw nor heard the train although she looked and listened.

Appellants contend that respondents failed to comply with the requirements of the "stop, look, and listen" rule as stated in *Koster* v. *Southern Pacific Co.*, 207 Cal. 753 [279 P. 788]. In so contending, appellants rely upon the testimony of other witnesses that they could see 500 feet to the north from the bottom of the grade, to certain photographs introduced into evidence which appellants contend show that the view of the tracks to the north was unobstructed west of the right of way fence, and further show, according to appellants, that respondents could have observed the approaching train through the trees along the right of way as they proceeded up the grade to the track. Appellants in addition refer to other photographs depicting the condition of the road in order to prove that the road was not as rough as respondents testified. From the foregoing evidence they conclude that respondents failed to take reasonable precautions to determine whether a train was approaching the crossing while in a position of safety to do so, and thus failed to live up to the standard of care imposed by the requirements of the "stop, look, and listen" rule, which failure amounts to contributory negligence as a matter of law.

Such argument not only wholly ignores the obvious conflict in the testimony but also the fact that respondents did stop, did look, and did listen. Whether the place selected by respondents to stop and look was the best possible place under the circumstances is immaterial. The operator of an

automobile is under a duty to use only that care which a reasonably cautious man would have used under similar circumstances in selecting the place of view. (*Nelson* v. *Southern Pacific Co.*, 8 Cal.2d 648, 652 [67 P.2d 682] ; *Pietrofitta* v. *Southern Pacific Co.*, 107 Cal.App. 575 [290 P. 597].) After having so conducted himself, whether or not it was negligent for him to have then proceeded up the grade and across the track, likewise must depend upon whether a reasonable man would have so proceeded under the circumstances then existing. (*Nelson* v. *Southern Pacific Co.*, *supra.*) We are unable to say as a matter of law that reasonable men would not have done as respondent husband did and therefore the question was properly left to the jury. In this respect the present case is analogous to *Emmolo* v. *Southern Pacific Co.*, *ante*, p. 87 [204 P.2d 427], decided this day, and the statements made therein are equally applicable to the instant case. Therefore it necessarily follows that since the jury, upon substantial, though conflicting evidence, reached its conclusion that respondents were not contributorily negligent as the verdict implies, we cannot interfere with such verdict. (*Crawford* v. *Southern Pacific Co.*, 3 Cal.2d 427 [45 P.2d 183].)

■ Appellants next urge that the judgment must be reversed by reason of the alleged misconduct on the part of respondents' counsel. Because appellants have devoted a major portion of their briefs to a discussion of such alleged misconduct we have carefully examined the entire record in this regard. From such examination it is readily apparent that while certain comments of respondents' counsel may well be termed acrimonious, intemperate and wholly unnecessary, the same observation applies with equal force to some of the comments of defense counsel. The entire case appears to have been tried in an atmosphere of decidedly heated advocacy, which quite probably formed the basis of the trial court's comment that he might well declare a mistrial. However, that is not to say that under all of the circumstances the attacked comments of plaintiffs' counsel were so prejudicial as to warrant this court in reversing the judgment. In any event in all but two instances defendants' counsel made no assignment of misconduct nor did he request the court to admonish and instruct the jury to disregard the same. And in each of the two instances mentioned, neither of which appears to be necessarily prejudicial to defendants, the jury was properly instructed by the court. We cannot say that this is such an

extreme case that the admonition and instruction by the court did not sufficiently remove the prejudicial effect, if any, of the attacked comments, which are properly before us. (*Aydlott* v. *Key System Transit Co.*, 104 Cal.App. 621 [286 P. 456].) ■ Furthermore, all of these matters were considered by the trial court on defendants' motion for a new trial, which was denied. It is the well-established rule that a trial judge, who has witnessed all of the circumstances surrounding the alleged misconduct, is in a better position than an appellate court to determine whether or not the jury was prejudicially influenced, and its verdict the result of the asserted misconduct of counsel, and "his conclusion in the matter will not be disturbed unless, under all of the circumstances, it is plainly wrong." (*Cope* v. *Davison*, 30 Cal.2d 193, 203 [180 P.2d 873, 171 A.L.R. 667].) Applying this rule to the present case we cannot say that "under all of the circumstances," particularly in view of the ample evidence supporting the verdict, the order of the trial court denying defendants' motion for a new trial was so "plainly wrong" as to warrant a different conclusion by this court.

■ Appellants' final contention that the verdicts of $20,000 in favor of Mrs. Music and $25,000 in favor of Mr. Music were excessive and the result of passion and prejudice induced by the alleged misconduct of plaintiffs' counsel, likewise is without merit. The record discloses that following the accident Mrs. Music was confined to a hospital for a period of 35 days. There is testimony that at the time of trial, nearly two years after the accident, she still suffered pain in her shoulders and arms, extreme nervousness, spasmodic shock, periodic fainting spells, severe headaches, extreme pain in her right leg necessitating rest periods of at least 30 minutes three times daily during which time the leg was required to be elevated, abdominal pains necessitating mechanical support, fractures of the right third, fourth, fifth, sixth and seventh ribs, fracture of the seventh left rib, and compound fractures of the last, second, third, fourth, fifth, sixth, and seventh vertebra, with resulting injury to her spinal nervous system. Mrs. Music testified that the result of such injuries made it impossible for her to carry on her normal household work or to assist in the milking of cows as she had previously done, or to otherwise assist her husband in the operation of their dairy farm. This testimony was corroborated by two of the physicians called by plaintiffs, who testified that her injuries were

"definitely permanent." At the time of the trial she had a life expectancy of 20.20 years.

Prior to the accident Mr. Music was a man in good health, operating a dairy farm on which he and his wife did most of the general work. He had been a schoolteacher having a lifetime teaching certificate, and for several years prior to the accident had an average annual income of approximately $4,000. At the time of the trial his right leg was tender and weak, his ankle was stiffened, the thumb on his right hand had been amputated, his right shoulder was weak and painful, his right arm would continually go to sleep, he was suffering from curvature of the spine, his back pained whenever he bent over; as a further result of his skull fracture he had persistent headaches, could not remember, could not concentrate or read, and the hearing in his left ear had been impaired. The severity of his injuries left him unconscious for a period of 21 days after the accident, and he was released from the hospital after a total period of 28 days. Testimony of the two doctors previously mentioned was that in their opinion he had suffered permanent injury to his brain; that he would get no better and that it would be impossible for him to operate his farm as before; that he might do "a little puttering around" but that he could do no farming as such; that he would never be able to follow a gainful occupation because it would be impossible for him to concentrate for any length of time. Taking the mortality tables as shown by the record it appears that at the time of the trial he had a life expectancy of 16.72 years.

Appellants' final contention attacks the alleged excessive damages on two grounds, (1) that the testimony of the doctors called by plaintiffs was predicated wholly upon subjective symptoms and therefore the verdict was necessarily the result of speculation, and (2) that the "shocking amounts" of the verdict were the result of passion and prejudice incited by the deliberately calculated and highly prejudicial misconduct of plaintiff's counsel.

In regard to the first portion of such contention it appears from the record that counsel for defendants interrogated the doctors at length upon the same question. Their answers disclose that their testimony was based upon objective as well as subjective symptoms. However, even if it be assumed for this discussion that the doctors' testimony was predicated solely upon subjective symptoms, "it does not follow that the judgment should be set aside as excessive. Medical science

and human experience teach us that the extent of personal injuries cannot be measured solely by objective signs. Injuries of traumatic origin may leave few, if any, outward signs and yet a severe concussion of the brain or injury to the nervous system may result in far greater and more lasting pain and disability than do many types of injuries which are plainly visible." (*Coleman* v. *Galvin,* 66 Cal.App.2d 303, 305, 306 [152 P.2d 39]; see, also, *Johnson* v. *Pearson,* 100 Cal.App. 503, 507 [280 P. 394].)

We turn then to the remaining portion of defendants' final contention. As stated in the early case of *Aldrich* v. *Palmer,* 24 Cal. 513, 516 (1864), ". . . the law does not attempt to fix any precise rules for the admeasurement of damages, but, from the necessity of the case, leaves their assessment to the good sense and unbiased judgment of the jury . . . subject to review by the Court, but it will never be disturbed unless the amount of the damages is obviously so disproportionate to the injury proved as to justify the conclusion that the verdict is not the result of the cool and dispassionate consideration of the jury. The leading object of such actions is to obtain reasonable and just compensation for the injury sustained, comprehending both the present and the future. But to ascertain what is a fair and just compensation in such cases, is a judicial problem of difficult, if not impossible solution. None, however, are more competent to its proper solution than the jury." Although the foregoing rule has been stated numerous times and in varying language nevertheless the essence thereof has remained the same. (See *Brown* v. *Boehm,* 78 Cal.App.2d 595 [178 P.2d 49], and cases therein cited.) Applying the foregoing rule to the facts and circumstances of the present case it appears that considering "both the present and the future" the verdict of the jury was not "disproportionate" to the extensive and permanent injuries suffered by the respondents. Moreover, the same contentions as are made in this appeal were previously before the trial court upon defendants' motion for a new trial and were decided adversely to appellants. In view of the foregoing and our own examination of the record we cannot say that the judgment is without support in the evidence or that it is so outrageously excessive as to justify a conclusion that it was impelled by passion, prejudice or corruption. (*Brown* v. *Boehm, supra.*)

The judgment appealed from is affirmed.

Adams, P. J., and Thompson, J., concurred.