[L. A. No. 20564. In Bank. Sept. 28, 1949.]

FRED L. WILKE, Plaintiff and Appellant, v. JAMES N. CROFTON, Defendant and Appellant.

David L. Sefman, Clifford Thoms, Robert P. Dockeray and Glen A. Lane for Plaintiff and Appellant.

Wood, Crump, Rogers, Arndt & Evans and Guy Richards Crump for Defendant and Appellant.

GIBSON, C. J.—Fred L. Wilke brought this action for breach of contract, fraud, an accounting and a declaration of his right to receive a proportionate interest in the profits of Hipodromo de Tijuana, a corporation operating a race track in Mexico. The trial court, sitting without a jury, rendered judgment for Wilke, and defendant Crofton has appealed on the ground of insufficiency of the evidence. Wilke has appealed from the part of the judgment awarding damages claiming they were improperly computed and are inadequate.

In August, 1942, Wilke obtained from members of the Arguello family, the owners of Rancho Tijuana, an agreement to lease a race track and hotel for a term of 20 years. The property had been expropriated by the Mexican government, and Wilke planned by litigation and negotiation to regain possession of the property and secure authority to reopen the race track. He immediately assigned the lease agreement to Crofton who agreed to use his capital and influence to secure a cancellation of the expropriation order and obtain a racing permit. It was understood that Crofton would operate the property either personally or through a corporation, and that certain persons who were to assist him in

obtaining permission from the government to reopen the track would receive a share in the enterprise. Crofton promised to give Wilke a 15 per cent interest, but the parties entered into a subsequent agreement which Crofton claims reduced the percentage Wilke was to receive.

During the next two years Crofton spent much time and approximately $70,000 of his own money in an effort to obtain possession of the property and secure a racing permit. In these activities he was assisted by Augustin Silveyra, a citizen of Mexico who had worked for Crofton and companies in which he was interested since 1927. Crofton paid Silveyra's expenses and promised him an interest in the project for his services. It was first agreed that Silveyra would receive 5 per cent, but later Crofton agreed to increase his interest to 10 per cent.

After two years of litigation, the Supreme Court of Mexico ordered that the Rancho Tijuana be restored to the Arguellos, and on December 13, 1944, Silveyra took possession of the track as agent of Crofton and custodian for the Arguellos. On December 15, Crofton obtained from the Arguellos a 10-year lease in his name as lessee covering all the premises save the hotel. He told Wilkie that he had been advised that the 20-year lease agreement was illegal. On December 28, Hipodromo de Tijuana was organized in Mexico City. Silveyra signed the articles of incorporation and 21 per cent of the stock was issued to him. A racing permit was granted to Silveyra as manager of Hipodromo de Tijuana, and on December 31, 1944, he supervised the opening of the track. Two days later a lease was made by the Arguellos to Hipodromo as lessee for nine years, 11 months and 25 days.

The net profits of the race track were distributed to the shareholders of Hipodromo in proportion to their holdings. Wilke never received anything from the enterprise, and he brought this action against Crofton seeking damages of $1,-500,000, allegedly the value of 15 per cent of the capital stock of the corporation. Crofton claims that he was frozen out by Silveyra and others, and that the only thing he received was $10,000 as reimbursement by Hipodromo for money expended in promotion.

The trial court found that Crofton entered into a scheme with Silveyra to defraud Wilke by making it appear that Crofton had lost his interest in the enterprise, that in furtherance of this conspiracy Crofton, acting through Silveyra, organized the Hipodromo de Tijuana, took 21 per cent of the

stock in Silveyra's name, arranged for a racing permit to be issued to Silveyra and caused the Arguello heirs to execute a lease on the race track property directly to Hipodromo. The court found and concluded that Wilke had been damaged in the amount of $9,750.

Crofton contends that the evidence does not support the findings with respect to his liability. The evidence is sharply conflicting as to many essential facts, but these conflicts must, of course, be resolved in favor of the judgment on this appeal. Crofton points out, however, that there is no direct evidence that he had anything to do with the organization of Hipodromo de Tijuana, or that he had any interest in the stock which was taken in Silveyra's name, or that he received anything from the enterprise other than the $10,000 reimbursement. The record is not clear as to the parts played by Silveyra and Crofton in the organization of Hipodromo, but we are of the opinion that the trial court could infer from the facts proved that Crofton used his agent Silveyra to bypass Wilke through the formation of Hipodromo and the issuance of the stock in Silveyra's name.

There appears to be no question that Silveyra acted as Crofton's agent and followed his instructions in all matters connected with the project until Hipodromo was organized on or about December 26, 1944. As we have seen, Silveyra took possession of the race track as agent and custodian for Crofton and the Arguellos on December 13, 1944, and a new lease was obtained by Crofton in his own name from the Arguellos on December 15. On the same day, or within a day or two thereafter, Crofton told Wilke in San Diego, ''I now have possession of the race track. I have arranged for the permit. I have got everything now.'' Crofton went to Mexico City on December 24 to form a company to operate the track and to obtain a racing permit so that the track could open on January 1. Silveyra arrived in Mexico City at about the same time, and on December 26, he went with Crofton to see officials regarding the issuance of a racing permit. A few days later a racing permit was issued to Silveyra as manager of Hipodromo.

Silveyra disclaimed having anything to do with the actual organization of Hipodromo de Tijuana, but he was listed in the articles as one of the five incorporators, and he signed the articles on December 28, 1944. Some of the other incorporators represented men who had been associated with Crofton

in the development of the enterprise. Silveyra did not explain why he received 21 per cent of the stock in Hipodromo or why no provision was made for Crofton, but he said he did not feel that he had "double-crossed" Crofton. The stock which was issued to Silveyra represented approximately the same percentage as that which Crofton, according to his own testimony, then expected to receive in the enterprise.

Silveyra knew when he went to Mexico City that Crofton held the lease on the race track, and he also knew that it was in force when the track opened on December 31. So far as the record shows the Crofton lease was never surrendered, the Hipodromo lease was for a period approximately the same as the unexpired portion of the Crofton lease, and the terms and conditions of the two leases were the same.

While Crofton was in Mexico City persons employed by him were preparing the track for racing, and when Silveyra returned to Tijuana the track was ready to begin operations. The track officials and employees, including Crofton's brother Ernest, had been hired by Crofton, and they all remained with the track under Silveyra's management. Crofton had a box next to Silveyra at the races, and they appeared to be on friendly terms, and in March 1945, they purchased two horses which they raced at Hollywood Park. Crofton brought no action against Silveyra or any of his associates who participated in the formation of Hipodromo to establish an interest in the enterprise or recover any of the profits of the race track. Nor did Crofton bring any action against the Arguellos or make any demand upon them to enforce the provisions of the lease which they had given to him. In our opinion the evidence is sufficient to support the findings with respect to Crofton's liability.

█ Wilke's contention that the damages allowed by the trial court are inadequate and that they were improperly computed must be sustained. The court found that "plaintiff was entitled to one-third (⅓) of defendant's twenty-one (21%) per cent interest in said corporation, Hipodromo de Tijuana, and in the profits therefrom" and "that plaintiff has been damaged in the amount of $9,750."

In their original agreement Crofton promised to give Wilke 15 per cent of the stock in the corporation which was to be formed to operate the race track. Later, when difficulties were encountered in obtaining the cancellation of the expropriation order, Crofton represented to Wilke that he would

have to give his other associates a larger interest in the enterprise than he had anticipated and urged Wilke to reduce his interest to 5 per cent. In a letter directed to Crofton dated December 11, 1944, Wilke agreed to accept an amount equivalent to 10 per cent of Crofton's interest in the enterprise instead of 15 per cent of the whole, as originally agreed upon. Wilke stated in the letter, ''In this connection, Jim, I am relying upon your statement to me that you expect to pull up with at least a 40% or a 50% interest.'' The letter agreement was delivered by Wilke and signed by Crofton on December 15, 1944.

The trial court found that the reduction agreement did not become effective for the reason that Crofton did not comply with its terms. The basis for this finding is not entirely clear because the reduction agreement is not expressly conditioned upon Crofton's receiving a 40 per cent or a 50 per cent interest. Crofton testified, however, that when the second agreement was entered into, he did not expect to receive more than approximately 20 per cent, and there may be sufficient evidence in the record to support a finding that the reduction agreement was not binding on Wilke. It is unnecessary for us to determine this question, however, because the trial court in computing damages did not use 15 per cent of the whole enterprise or 10 per cent of Crofton's interest therein. Instead, the court found that Wilke was entitled to one-third of Crofton's 21 per cent interest in Hipodromo de Tijuana. There is no support in the evidence for an award on this basis, and we can find no logical explanation for it under any interpretation of the agreements made between the parties.

Furthermore, even if we should accept as correct the finding that Wilke was entitled to one-third of 21 per cent, the court could conclude that this was equivalent to the sum of $9,750, the amount awarded Wilke, only on the premise that the entire capital stock of Hipodromo was worth but $139,285.71. It is impossible to justify such a premise on the record before us. The net profits of Hipodromo for 10 racing days of the first meet alone amounted to $270,804.14, and Wilke estimated that the 10-year lease held by Hipodromo was worth between $15,000,000 and $18,000,000. Crofton offered no evidence as to the value of the Hipodromo holdings, but in a counterclaim filed in this action he alleged that his interest in the original lease was worth not less than $500,000, and the court so found. This, of course, is not a finding as to

the value of Crofton's interest in Hipodromo, and it involves certain undetermined factors, but it is some evidence of Crofton's appraisal of the value of the enterprise. All the evidence shows that the Hipodromo stock was worth far in excess of $139,285.71.

In our opinion the damages were improperly computed, the sum awarded is inadequate, and the judgment must be reversed. The question arises whether the case should be remanded on all issues or on the issue of damages alone. In many instances a retrial of the single issue of damages would meet the requirements of substantial justice (see *Collins v. Ramish*, 182 Cal. 360, 368-369 [188 P. 550] ; *Gray v. Cotton*, 166 Cal. 130, 139 [134 P. 1145] ; *Pearsall v. Henry*, 153 Cal. 314, 330 [95 P. 154, 159] ; *Paul v. Williams*, 64 Cal.App.2d 696, 703 [149 P.2d 284] ), but where, as here, the evidence as to liability is sharply conflicting and the damages awarded are so grossly inadequate as to indicate a compromise of the issues of liability and damages, the entire case should be reexamined. (See *Keogh v. Maulding*, 52 Cal.App.2d 17, 19-22 [125 P.2d 858] ; *Wallace v. Miller*, 26 Cal.App.2d 55, 57 [78 P.2d 745] ; *Bencich v. Market St. Ry.*, 20 Cal.App.2d 518, 529-530 [67 P.2d 398] ; *Donnatin v. Union Hardware & Metal Co.*, 38 Cal. App. 8, 10-11 [175 P. 26, 177 P. 845].)

The judgment is reversed, defendant to pay costs on appeal.

Shenk, J., Edmonds, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.

Plaintiff and appellant's petition for a rehearing was denied October 27, 1949.