[Civ. No. 26776. Second Dist., Div. Two. May 23, 1963.]

GERALD PAUL REZNICK, Plaintiff and Appellant, v. HILLMAN-SIDNEY AUTO SALES, Defendant and Respondent.

Cruikshank & Gershon, Fendler, Gershon & Warner and Harry L. Gershon for Plaintiff and Appellant.

Chase, Rotchford, Downen & Drukker, Robert E. Brimberry, William G. Tucker and Peter Andrew Notaras for Defendant and Respondent.

ASHBURN, J.—This is an action for personal injuries received when plaintiff's car, standing at an intersection in obedience to a traffic light, was struck in the rear by defendant's car driven by defendant's agent. Plaintiff claims to have suffered a whiplash injury in the accident, which occurred on December 9, 1959, and that the whiplash had developed at the time of trial (April 26, 1962) into a herniated disc. Plaintiff's special damages aggregated $2,674.50; included therein is an item of $159.60 for repairs to plaintiff's Borgward sedan and $36 paid to Southern California Permanente Group, of which plaintiff was a member, for three preliminary examinations of plaintiff by its doctors (total $195.60). The jury rendered a verdict in plaintiff's favor for $200, and counsel in their briefs agree that this amount represents the total of the last mentioned items.

Plaintiff appealed and urges three main points, (1) that the evidence is insufficient to support the verdict, in that it affirmatively shows without contradiction that plaintiff suffered physical injury in the accident which is not and could not be included within the $200, (2) that the court erred in refusing an instruction requested by plaintiff to the effect that defendant's failure to call as a witness Dr. Blunden, who had examined plaintiff at the instance of defendant only four months after the accident (contenting itself with the testimony of Drs. Adelstein and Marinacci, both of whom saw the plaintiff not sooner than two years after the accident), raised a presump-

tion that Dr. Blunden's testimony would have been adverse had he been called, (3) that the court erred in submitting to the jury as a question of fact the issue of proximate cause.

It was conceded by defendant's attorney at the beginning of the trial that defendant is liable for any injuries suffered by plaintiff in the accident, which of course amounted to a concession of liability for any and all injuries proximately so caused. Because it is dispositive of the appeal we deem it necessary to discuss only the claim of insufficiency of the evidence; the other alleged errors may or may not occur upon the new trial which we find inevitable.

Counsel for respondent argue that the sole question canvassed at the trial was whether plaintiff was suffering or had suffered from a herniated disc. Their brief says "the issue before the jury was not whether or not the plaintiff had some injury, but rather clearly and simply—does the plaintiff have a herniated disc" and that the case "was tried on the sole issue as to whether or not the defendant's negligence proximately caused a herniated disc in the body of the plaintiff." This is an overstatement. The record shows that defendant's aim was a trial of that single issue but it does not warrant the assertion that plaintiff's counsel did not strive for half a loaf if he could not gain a whole one.

After visiting the Permanente doctors three times plaintiff consulted Dr. Ernest J. Penka, a well qualified specialist in neurosurgery, who examined him on December 28, 1959 and testified: "It was my opinion at the time I first examined Mr. Reznick that he was suffering from a lumbosacral strain. . . . ." Defendant's only witnesses were Dr. Leo J. Adelstein, Dr. Alberto A. Marinacci and the driver of defendant's car, Miss Leslie Jean Sullivan. Dr. Harry Blunden examined plaintiff at defendant's request on April 21, 1960 (not 1961) which was four months after the accident.

Dr. Adelstein, a specialist in neurological surgery, made one examination of plaintiff on December 7, 1961, two years after the accident. He testified that he discovered no "objective findings as such" but he "thought that he [plaintiff] probably had sustained a back sprain or strain" which, on the date of his examination, he "was unable to verify . . . with . . . what is called objective findings." To this he added "Aside from his complaints and from the tenderness on the areas that I have described I found nothing objectively that I could use" . . . Also "Q. The mere fact that it's termed 'subjective,' doesn't mean that it's unreal, does it? A. No,

sir, it does not.'' and ''Q. Now, then, with reference to your objective tests you did find, did you not, some tenderness on palpation over the lumbar spine on the left side? A. That is true. Q. You did find, did you not, some discomfort in Mr. Reznick's carrying out of bending movements? A. That is true. Q. You did find, did you not, the straight leg raising was uncomfortable but might be carried out? A. That is also true. Q. Now, you found no muscle spasm? A. On that date I did not, sir.''

Dr. Marinacci did not examine plaintiff except to the extent of making an electromyographic examination on December 9, 1961 (two years after the accident) and gave no testimony upon any other subject such as an original sprain or strain in plaintiff's back.

Of course that is not the whole story. Drs. Penka and Friedman (the latter a specialist in medical neurology including electromyology and encephalography) testified to facts and opinions supporting a slow development in plaintiff of a herniated disc as a proximate result of the whiplash received by him in the accident. On the other hand Drs. Adelstein and Marinacci so testified as to create a substantial conflict in the evidence upon this issue, each of them saying that plaintiff suffered no such result. Dr. Adelstein, as well as respondent's counsel, emphasized the absence of objective symptoms (though conceding the possible reality of suffering whose symptoms are merely subjective). This is a familiar refrain of defense lawyers — no injury because no objective symptoms.

This court, speaking through Mr. Presiding Justice Moore in *Sandoval* v. *Southern Cal. Enterprises, Inc.,* 98 Cal. App.2d 240, 255 [219 P.2d 928] said ''[i]t is a scientific truism that the extent of personal injuries cannot be measured solely by objective signs. While traumatic injuries may leave few or no outward signs of bruises and contusions, yet a severe concussion of the brain or 'injury to the nervous system may result in far greater or more lasting pain and disability than do many types of injuries which are plainly visible.' (*Deevy* v. *Tassi,* 21 Cal.2d 109, 120 [130 P.2d 389]; *Coleman* v. *Galvin,* 66 Cal.App.2d 303, 305 [152 P.2d 39]; *Johnson* v. *Pearson,* 100 Cal.App. 503, 506 [280 P. 394].)''

In the cited *Coleman* case Mr. Justice Spence spoke for the court as follows, at page 305-306: ''Defendant makes much of the fact that there were no serious fractures of the bones in plaintiffs' bodies. He also calls attention to the fact that

the remaining signs of the injuries at the time of trial, which was held one year later, were largely subjective rather than objective. From these facts he argues that only very small awards would have been justified and that the actual awards were therefore excessive. While the facts to which defendant refers have some significance, they are not conclusive. As we said in *Taylor* v. *Lowenstein,* 113 Cal.App. 665 [298 P. 847] at page 668, 'Counsel for appellant calls our attention to the fact that the only objective signs of the injuries at the time of the trial were certain scars which were not prominent, and that everything else was subjective. Even though this be conceded, it does not follow that the judgment should be set aside as excessive. Medical science and human experience teach us that the extent of personal injuries cannot be measured solely by objective signs. Injuries of traumatic origin may leave few, if any, outward signs and yet a severe concussion of the brain or injury to the nervous system may result in far greater and more lasting pain and disability than do many types of injuries which are plainly visible. As was said in *Johnson* v. *Pearson,* 100 Cal.App. 503 [280 P. 394, 396] at page 507: "It is also a fact, well within human experience, that suffering from the disruption of the nervous system of the human body may be, and often is, more intense and severe than most any other form of suffering." ' " See also *Robison* v. *Atchison Topeka & S.F. Ry. Co.,* 211 Cal. App.2d 280, 286-287 [27 Cal.Rptr. 260]; *Music* v. *Southern Pacific Co.,* 91 Cal.App.2d 93, 99-100 [204 P.2d 422].

These things are recognized as true by Dr. Adelstein. He testified in this regard "Q. Well, now, don't you also take into account what the patient tells you about what hurts and where? A. Oh yes. You take into account all of these factors. Q. Now, then, there are certain symptoms of disc injury where there has been nerve root involvement that one might describe as subjective, isn't that true? A. That is true. Q. For example, if there has been an injury to the fifth lumbar, first sacral disc, the disc between these two vertebra[e], one of these of his subjective symptoms, that would be observed would be a complaint of pain in the low back area, isn't that true? A. That may be present, that's right. Q. And tenderness over the lumbar spine. A. That is right also. Q. If the herniation has proceeded to the point where the nerve root, the sacral-1 nerve root, has been pressured and is irritated, a further subjective complaint will be of pain or numbness in one or both of the lower extremities? A. That may be so.

That may be present. Q. And it will include hypalgesia of one or both of the feet? A. By that you mean less sensation? Q. Yes. A. Numbness? Yes, that may be present. Q. And it may also include paresthesias of one or both of the lower extremities, a sort of tingling sensation as if your leg were going to sleep? A. Yes, sir, that may be present. . . . Q. Now, these particular complaints were related to you by Mr. Reznick, were they not? A. Yes, directly they were.''

■ This is not a case in which respondent would have the court reject the evidence of appellant's witnesses alone; the effort is to reject such testimony and ignore that portion of Dr. Adelstein's testimony which is favorable to appellant. This cannot be done. It is clear that experts for both sides diagnosed a sprain or strain in the lower back as an immediate result of the accident and that the jury's 9 to 3 verdict for $200, if reached in the manner asserted by counsel for both sides, included not more than $4.40 as damages for that injury. In fact counsel for respondent repeatedly assert that the verdict was rendered upon the hypothesis that plaintiff received no personal injury whatever in the accident. ''Therefore, the $200.00 represented the property damage plus the $36.00 bill at Permanente recompensing the plaintiff for the expense he incurred in finding out he was not injured . . . the following are a list of things which the jury had to think about in analyzing the fact that the plaintiff was not, in fact, injured at the time of this accident, . . .'' ''The jury cut the plaintiff off after the Permanente visits, and this was a clear indication that they did not believe that he was injured in this accident at all, and that the Permanente visits were incurred by virtue of his finding out from those doctors that he wasn't hurt and recompensed him for his cost of finding it out.''

■ In a situation such as is presented at bar, where evidence produced by both sides shows that plaintiff received a back injury as a result of defendant's negligence and the jury awarded $4.40 [$200 minus $195.60), or nothing, as damages for such injury the appellate court (having no power of *additur*; *Dorsey* v. *Barba,* 38 Cal.2d 350, 356-9 [240 P.2d 604]) is duty bound to reverse.

*Bencich* v. *Market St. Ry. Co.,* 20 Cal.App.2d 518, 522 [67 P.2d 398] ''It is obvious from the foregoing statement of the evidence strongest in favor of respondents, that the award to appellant is out of all proportion to the expenses necessarily incurred by him as a result of the injury and the damages he

has sustained through pain and suffering, and permanent injury and disability. 'It is well settled that an inadequate recovery may be set aside and a new trial granted on the ground that the evidence does not justify the verdict.' (*Lambert* v. *Kamp, supra*, [101 Cal.App. 388 (281 P. 690)] at p. 390).''

*Gamberg* v. *Industrial Acc. Com.*, 138 Cal.App. 424, 427 [32 P.2d 413]: ''It is well settled, of course, that reviewing courts may not invade the field of the fact-finding body; and consequently where a conflict of evidence exists the findings of the trier of the facts are conclusive. But it is equally well established that the application of the foregoing rule is limited to cases where the conflict is substantial and real, and not fanciful or fictitious [citations] nor a mere pretense [citations]; and in this regard it has been said that mere conclusions will not serve to meet the definition of substantial or any evidence as against positive, direct evidence of a fact [citation]; also that the conclusions of an expert based upon an incorrect or faulty hypothetical case are of no practical value [citation.]''

*Deevy* v. *Tassi*, 21 Cal.2d 109, 120-121 [130 P.2d 389]: ''[I]n a case where it appears that a verdict is so grossly disproportionate to any reasonable limit of compensation warranted by the facts as to shock the sense of justice and raise at once a strong presumption that it is based on prejudice or passion rather than sober judgment [citations] the appellate court may reverse the judgment and remand the case for a new trial either on all the issues or on the issue of damages alone [citations] . . .''

Accord: *Wilson* v. *City & County of San Francisco*, 106 Cal.App.2d 440, 443 [235 P.2d 81]; *Price* v. *McComish*, 22 Cal.App.2d 92, 95-96 [70 P.2d 978]; *Wilke* v. *Crofton*, 34 Cal. 2d 304, 310 [209 P.2d 790]; *Clifford* v. *Ruocco*, 39 Cal.2d 327, 329 [246 P.2d 651].

The judgment is reversed.

Fox, P. J., and Herndon, J., concurred.

A petition for a rehearing was denied June 21, 1963, and respondent's petition for a hearing by the Supreme Court was denied July 17, 1963.