[Civ. No. 718.   Fifth Dist.   Feb. 28, 1967.]

SYLVIA BUNIGER, Plaintiff and Appellant, v. CHARLES E. BUNIGER et al., Defendants and Respondents.

Chain & Younger and Milton M. Younger for Plaintiff and Appellant.

Stutsman, Nagel, Ferrari & Cole and J. J. Nagel for Defendants and Respondents.

CONLEY, P. J.—The plaintiff, Sylvia Buniger, sued her son and daughter-in-law for damages resulting from the negli-

gent construction and maintenance of stairs between their garage and kitchen proximately resulting in her falling and breaking her thigh bone; the suit was for $35,000. The jury returned a verdict for the plaintiff in the amount of $2,500. As the special damages were $1,976.21, this left $523.79 as the allowance for her pain and suffering and her permanent damages. After a motion for a new trial was denied, the plaintiff appealed to this court ''from the judgment entered in the above-entitled Court on December 30, 1965, and from the whole thereof.'' While, as just stated, the appeal was not restricted to any specific part of the judgment, the appellant seriously asks that this court limit the reversal to the question of damages only. The respondents ask that the judgment be affirmed, but that if there is a reversal it should extend to the whole judgment. This latter contention apparently is based on the thought that the liability is questionable and that the size of the verdict for general damages must have been due to a compromise on the part of the jury; among the factors cited to support this contention is the fact that the plaintiff is the mother of Charles E. Buniger, and that she and her retired husband were visiting with him and his family at the time of the injury, although it is claimed that the mother was an employee of her son for the purpose of ''baby-sitting'' and doing light housework in return for the board and lodging of herself and her husband; also stressed is the fact that the jury was divided nine to three in favor of the verdict actually brought in.

There are thus, upon a survey of the record, two questions actually to be decided. There is substantial evidence of negligence on the part of defendant householders which would justify a finding by the fact finders of negligence, on the part of the defendants, which was a proximate cause of the damage sustained by the plaintiff. The two questions for us to decide are (1) whether the award of general damages is so small as to require a reexamination by the trial court and jury of that issue, and (2) whether, if the answer to the first question is affirmative, this court should grant a new trial on all issues rather than to restrict it to the question of damages only.

Plaintiff, Sylvia Buniger, was 63 years old at the time of the trial. She was married and lived with her husband in Loma, Colorado. Mr. Buniger had been a farmer, and she had lived her life as a housewife rearing five children, one of whom was Charles Buniger, defendant. She had gone to Bakersfield to the home of this son in response to a letter from his wife

saying that they were having economic difficulties, and that she could go to work outside the home if plaintiff would come and take care of the children. Plaintiff and her husband arrived in Bakersfield about April 10. She had visited with her son's family three times before. After her arrival in April, she did such things as fix breakfast for the children, get them dressed and ready for school, and perform general light housework. She and her husband planned to stay until the last of June. On April 24, about 5 or 5:30 p.m., plaintiff and her daughter-in-law were fixing dinner. The daughter-in-law had not worked that day. Plaintiff had taken care of the children, made the beds, straightened up the house and picked up the soiled clothes. At the time of the accident, Charles, having left with his truck for several days, was gone. Plaintiff's husband was in the front room; the two children were home. The nine-year-old boy's chore was to empty the garbage, and on this particular day the sister had been asked to help him. The children picked up the garbage to take it out, and a milk carton with a residue of milk in it fell off the top of the garbage and milk spilled on the floor. Plaintiff went to get the mop to clean up the milk from the linoleum so that the children would not slip and fall; the mop was in the garage. Four doors opened out from the kitchen; one door let out into the backyard, one door went into the front room, one opened toward the back of the house to a bedroom, and the fourth door opened into the garage where the mop was kept. Plaintiff went through this door to get the mop. The door into the garage opened out onto the steps going down to the floor of the garage. As plaintiff proceeded through the door, her daughter-in-law was in the kitchen preparing to put the dinner on the table and the two children were on their way outside. Plaintiff opened the door into the garage with her right hand, held onto the door jamb and reached toward the light switch to turn on the light, because the garage was very dark. She took a step and there was no step beneath her; she fell on her right side. Her left hand had been holding onto the door jamb as she stepped out with her foot; the floor is concrete.

Plaintiff had been in the home for about 14 days at the time she fell, and she had used the steps almost every day; before her fall, she had noticed that one of the steps was deeper than the others. After she had fallen, she called for help; she was in pain and her leg was numb. A doctor was sent for; neighbors came and plaintiff was taken to the hospital by car; X-rays were taken; Dr. Iger, a bone specialist, saw plaintiff;

she had improper rotation of the leg; her hip was broken; it was extremely painful; surgery was necessary, and the next morning plaintiff was operated on. A prosthetic device was fitted into the shaft of the bone.

Plaintiff stayed in the Bakersfield Memorial Hospital for 31 days after surgery. In the hospital, plaintiff attempted to stand with the aid of a walker and to use her leg. She also had physiotherapy treatments. She then returned to her son's home and stayed there about a month, and learned to walk on crutches; she used a wheel chair and also a walker.

After this partial recovery, plaintiff suffered a minor stroke at the home of her son in Bakersfield, and then was taken to Colorado by two of her sons. In Colorado, she suffered a second minor stroke and was hospitalized. She was home about three days when she had another stroke, and went back to the hospital for six days; she then returned home, used her crutches, and began to walk again. At the time of the trial, it was plaintiff's testimony that she did not sustain any disability as a result of the minor strokes. After the crutches were used for a time, plaintiff's condition improved and she was later able to use a cane. Several months afterwards she could walk without the crutches. Plaintiff testified that, while she was getting better at the time of the trial, there were many things she could do before the fall that she was now unable to do. Before the accident, she and her husband had gone camping in their camper to hunt and to fish. They had gone deer hunting each year, camping out in tents, and hunting for rock specimens and arrowheads. At the time of the trial, plaintiff could not participate in these activities. There was much of her housework which she could not handle. She had attempted to go fishing with her husband once before the time of trial, but found that she could not manage it and had to sit in the car; she could not walk up the hill or down the hill, because her hip would not allow her leg to bend properly. At the time of trial, it was very difficult for plaintiff to sweep or mop, or to stoop, or use lower cupboards.

As previously indicated, there is ample evidence of negligence on the part of defendants. A glance at the pictures, which are exhibits, shows that the steps are hazardous. They are built of concrete and span a corner so that they are pie shaped, and the door opens out so that the top step is a narrow triangular-shaped ledge, which could not accommodate a foot at the left side. There was ample evidence in the case to the effect that the installation and maintenance of the steps

were negligent. Testimony to that effect was given by a Director of the International Conference of Building Officials, an architect, and a building inspector. And negligence was in effect conceded by counsel for the defendants. The latter argued strongly, however, that contributory negligence was shown on the part of the mother of defendant-son, although she was thoroughly familiar with the house and had used the steps on many occasions, she did not act with due care on the occasion of her injury. The defendants also contended that the plaintiff was 63 years of age and had suffered from several illnesses prior to and after the breaking of her hip. Counsel for the defendants also stressed the fact that the jury is the finder of fact, and that it had leeway to determine that perhaps some of the special damages were unnecessary and also to judge what in fact were the general damages suffered by the plaintiff, citing *Gersick* v. *Shilling,* 97 Cal.App.2d 641, 645 [218 P.2d 583]; *Johnson* v. *McRee,* 66 Cal.App.2d 524, 528 [152 P.2d 526], and *Harris* v. *Los Angeles Transit Lines,* 111 Cal.App.2d 593 [245 P.2d 35].

In the final analysis, each case differs in some particulars from the next one. ██ While it is generally true that the finders of fact are the final judges of the extent of damages suffered in a tort case, it is also true that this rule is not universal and that in cases such as this the appellate court may use common sense and the long line of authorities which hold that inadequate damages may be such as to shock the conscience and to require a reappraisal. There are many cases in which, on appeal, it has been recognized that the award made by the jury was inadequate. (*Bencich* v. *Market Street Ry. Co.,* 20 Cal.App.2d 518 [67 P.2d 398]; *Peri* v. *Culley,* 119 Cal. App. 117 [6 P.2d 86]; *Bauman* v. *San Francisco,* 42 Cal.App. 2d 144 [108 P.2d 989]; *Hall* v. *Murphy,* 187 Cal.App.2d 296 [9 Cal.Rptr. 546]; *Amore* v. *Di Resta,* 125 Cal.App. 410 [13 P.2d 986]; *Weiskopf* v. *Smith,* 44 Cal.App.2d 438 [112 P.2d 665]; *Wilson* v. *City & County of San Francisco,* 106 Cal. App.2d 440 [235 P.2d 81]; *Reznick* v. *Hillman-Sidney Auto Sales,* 216 Cal.App.2d 569 [30 Cal.Rptr. 889]; 16 A.L.R.2d 393, 409; 22 Am.Jur.2d, Damages, § 398, p. 533.)

We have concluded in this case that the general damages are so small as compared with the actual injury and the permanent results that we must grant a new trial in the case. ██ The question remains whether, as originally requested in the notice of appeal by the appellant, the reversal should affect the entire judgment, or whether the reversal should attach to

the issue of damages only. In view of the fact that the question of liability was hotly contested, we have concluded that the result of the trial leads to the inevitable inference that the verdict was the product of a compromise, and that it would be unfair to the respondents to restrict the reversal to the sole issue of damages. The entire case should be retried.

The judgment is reversed.

Gargano, J., concurred.