[Civ. No. 10125.   First Appellate District, Division One.—April 26, 1937.]

JOHN H. BENCICH, Appellant, v. MARKET STREET RAILWAY COMPANY (a Corporation) et al., Respondents.

Edmund J. Holl for Appellant.

Wm. M. Abbott, William M. Cannon and Walter M. Linforth for Respondents.

BRAY, J., *pro tem.*—Plaintiff brought this action to recover damages for personal injuries sustained in a collision between a fire engine on which he was riding and one of the San Mateo interurban street cars of the defendant company. The case was tried twice. The verdict in the first trial was $20,000, and on motion of defendants a new trial was granted. The second verdict was for $5,000. The defendants made no motion for new trial nor did they take an appeal, but plaintiff moved for a new trial. His motion was denied, and he now appeals, asking that this court reverse the judgment as to the amount of damages awarded, and remand the case for a new trial upon the issue of damages alone.

The accident occurred at the intersection of Seventeenth and Mission Streets, which intersection is controlled by traffic signals. The fire engine, responding to an alarm, was proceeding westerly along Seventeenth Street. Appellant was sitting alongside of the driver, and was sounding the bell and siren. At about the time the engine reached the intersection a northbound San Mateo car was crossing the intersection, and the engine collided with this car with great force. The greater part of the briefs of both parties is devoted to a discussion of the evidence; but there seems to be a conflict on every material point. Appellant points out evidence to the effect that the street car was proceeding in disobedience of the traffic signals; and respondents claim that the evidence established that the fire engine was traveling at an excessive rate of speed and that such speed was the proximate cause of the accident. The evidence on both these points is conflicting.

Plaintiff's notice of intention to move for a new trial is based upon all statutory grounds; however, it is evident that the main ground relied upon is the ground of insufficiency of the evidence to justify the verdict; in other words, that the amount of the verdict is so inadequate that the evidence does not justify it. ■ It is well settled that this ground of motion for a new trial appeals peculiarly to the discretion of the trial court, and its order refusing a new trial will not be disturbed on appeal in the absence of a showing of abuse of discretion. (*Lambert* v. *Kamp,* 101 Cal. App. 388, 392 [281 Pac. 690] ; *Donnatin* v. *Union Hardware & Metal Co.,* 38 Cal. App. 8 [175 Pac. 26, 177 Pac. 845] ; 2 Cal. Jur. 908.)

There can be but little question in this case that the verdict was clearly inadequate, so inadequate, in fact, that the evidence did not justify the jury in awarding such small damages for such a severe injury, and so inadequate that the failure of the court to grant a new trial constituted a clear abuse of discretion in denying the motion for a new trial, unless as contended by respondents the evidence shows that plaintiff is barred from recovering at all. That the verdict is so grossly inadequate in amount, that it should not be permitted to stand is shown by the following facts (and in this respect, only the facts as to which there is no dispute, and the facts most favorable to the respondents are considered, under the rule which requires that every intendment be indulged in support of the ruling made by the trial court) : Appellant received in the accident, in addition to a fractured left humerus and bruises from which he has fully recovered, a badly crushed right foot. He spent approximately six months in the hospital, where traction was placed on the arm, pins were inserted into the toes and traction also applied on the foot and leg. The outer and forepart of the foot eventually became gangrenous and had to be amputated (including all toes except the big toe), and five skin grafts done. The outer and anterior third portion of the foot has been amputated so that at present it extends back about one-half of the fifth metatarsal to the neck of the fourth and third slightly upon the neck of the fourth. The fifth is intact, as is the big toe. The principal weight bearing surface of the foot is missing, or where the normal foot has a triangle for weight bearing, appellant's foot has but two points for this purpose, namely, the base of the big toe and the heel. To remedy this defect appellant is and will be required to wear a specially prepared brace in his shoe. Appellant was 36 years of age and his occupation was that of a fireman, in the capacity of hoseman, employed by the city and county of San Francisco. His monthly salary was $200, from which was deducted $15 a month, his *pro rata* contribution to a city employee's public employment relief fund. Under the regulations of the civil service as provided in the charter of the city and county of San Francisco, appellant's status as a fireman was fixed for a remainder of 12 years, at which time he had an optional right to retire. This period, of course, was less than his life expectancy of 30 years. By reason of the injuries received in this accident, appellant

was retired upon a life pension of $100 per month. His special damages for nursing, X-rays, laboratory, physicians' services, etc., were $2,423.37. Thus, the allowance made by the jury for pain and suffering and permanent disability was $2,576.63. This is not considering anything for loss of compensation which amounted to $3,441.72. The city and county of San Francisco voluntarily paid appellant's salary ($185 net) up to the time he retired on November 1, 1934, when, as before stated he commenced to receive a life pension of $100 per month. The city has filed a claim of lien against the judgment herein, under the terms of the Workmen's Compensation Insurance and Safety Act of the State of California, for $5,965.

Respondents contend that this claim of the city is excessive and that until the Industrial Accident Commission determines the percentage of appellant's disability, it cannot be determined whether or not the amount of appellant's special damages exceed the amount awarded by the jury, or how much of this amount appellant will have to turn over to the city. Regardless, however, of the question of whether or not the city gets any of the judgment, it is patent that at the very most the amount awarded by the jury barely, if at all, repays appellant his special damages. Since the accident he was elected treasurer of the David Scannell Club at $85 per month. This being an elective position it is, of course, problematical how long he will retain it.

While there was direct conflict of testimony as to the extent of appellant's disability, it was conceded by respondents' own medical men that his disability is at least 10 per cent and that he is unable to climb ladders or place weight on his right foot in a position other than while walking, and then only with the use of a special shoe. It is obvious from the foregoing statement of the evidence strongest in favor of respondents, that the award to appellant is out of all proportion to the expenses necessarily incurred by him as a result of the injury and the damages he has sustained through pain and suffering, and permanent injury and disability. "It is well settled that an inadequate recovery may be set aside and a new trial granted on the ground that the evidence does not justify the verdict." (*Lambert v. Kamp, supra,* at p. 390.)

Respondents contend that even though the damages awarded were inadequate, nevertheless the trial court's action in refusing a new trial should be sustained because the evidence shows, first, that the respondents were not negligent, and secondly, that the appellant was contributorily negligent, and that it is the duty of the appellate court before considering the question of the inadequacy of damages to determine whether or not the plaintiff is entitled to a verdict at all. They claim that inasmuch as inadequacy of the damages awarded is not a ground for new trial, but can only be considered under the ground of insufficiency of the evidence to justify the verdict, that the court must determine whether or not the evidence on the other issues, particularly negligence and contributory negligence, justifies the verdict. In *Lambert* v. *Kamp, supra,* page 393, it is said: ''Every intendment must be indulged in support of the ruling made by the trial court. If in its opinion the *evidence, considered as a whole,* was of a character to *clearly* establish the fact that defendant was not guilty of negligence, and hence not liable for any damage (and in the absence from the record of all evidence touching the question of defendant's negligence, we must so assume), that it constituted no abuse of discretion for the court to deny plaintiff's motion for a new trial, made upon the ground of inadequacy of the amount awarded.'' (Italics ours.) (To the same effect, *Donnatin* v. *Union Hardware & Metal Co., supra,* p. 12.) A review of the evidence to determine liability in the first instance is a condition precedent to a decision on the question of inadequate damages. (*Bakurjian* v. *Pugh,* 4 Cal. App. (2d) 450 [41 Pac. (2d) 175].)

It will be noticed that these decisions hold that in determining the question of whether or not the plaintiff in a case was entitled to a verdict at all, the court is to determine whether the evidence *as a whole* is of a character to *clearly establish* the fact that plaintiff was not entitled to a verdict. Therefore, before an appellate court can conclude that the trial court in refusing a new trial upon a motion based upon insufficiency of the evidence to justify a verdict because of inadequacy of damages, was actuated by a well founded belief that the facts did not justify a verdict in favor of the plaintiff at all, there must be not merely a conflict of evidence upon these points but the evidence must clearly establish them. Thus, in this case, for us to determine that the reason the trial court denied a new

trial upon the inadequacy of damages was not because of an abuse of discretion in that respect, but because it rightly felt that either the defendants were not negligent, or that the plaintiff was guilty of contributory negligence, such lack of negligence on the part of the defendants or contributory negligence on the part of the plaintiff must be *clearly established* by the *evidence as a whole*. It is not sufficient that there be merely some evidence in this respect or that there be a conflict. To hold otherwise would mean that in no case where there was any evidence whatsoever in the record negativing defendants' liability or indicating contributory negligence by plaintiff, could an appellate court set aside the ruling of the lower court in denying a new trial for inadequacy of damages.

Respondents contend, however, that if there is any evidence whatever that would support a finding of nonliability, the appellate court must assume that the lower court denied the motion for a new trial upon the grounds of such nonliability. In support of this contention, they cite a number of cases, which do not so hold. In *Green* v. *Soule,* 145 Cal. 96 [78 Pac. 337], and *Wulbern* v. *Gilroy Express,* 116 Cal. App. 222 [2 Pac. (2d) 508], the court was not dealing with the questions arising from a claim of inadequacy of the verdict, but in cases based upon the action of the trial court in determining motions for new trial upon the questions of liability alone.

Although the court in *Lambert* v. *Kamp, supra,* in discussing this matter, said that the question was ''not whether the judgment is so inadequate as to warrant this court in sending the cause back for a new trial, but, rather, did the trial court err in denying appellant's motion for a new trial'' and in determining ''whether the complaining party was entitled to recover anything at all'', still the court did not discuss conflicts in the evidence or whether or not there was any conflict in the evidence, but said that the record was such ''as to justify the trial court in concluding that the party asking for a new trial had *totally failed* in his primary proof of negligence''. (Italics ours.) This statement is of little value in our case where the evidence, viewed in one aspect, fully supports primary proof of negligence, but such evidence is in conflict when viewed from the opposite aspect. Certainly no one could contend that where the evidence totally fails to prove negligence, that the question of damages, either adequate

or inadequate, is material as damages must be predicated upon negligence.

Even in *Green* v. *Soule, supra,* in discussing the general rule as to the duty of the lower court in passing upon motions for new trial, the court uses the language "if the judge . . . is convinced that it" (the verdict) "is *clearly* against the weight of the evidence", he should grant a new trial. (Italics ours.) But in our case the court refused to grant a new trial even though the damages were grossly inadequate and in our determining whether or not it should have granted the new trial, we cannot say, by reason of the conflict in the evidence, that the verdict upon the question of *liability* is *clearly* against the evidence. We can say that on the question of *damages* it clearly is, and that on the question of liability there is ample support in the evidence for the jury's verdict.

In the case of *Caulfield* v. *Market Street Ry. Co., ante,* p. 220 [66 Pac. (2d) 752], the court in determining an appeal by the plaintiff from an order denying her motion for new trial upon the grounds of the inadequacy of the damages awarded her, answered the same contention of the defendants there as made by the defendants here, by saying: "Nor, as urged by the defendants, does it follow from the order denying the motion for a new trial that the trial court was of the opinion that the evidence was insufficient to prove negligence. . . . There was sufficient evidence on the latter issue to go to the jury, and their conclusion is fairly supported."

■ Taking first the evidence upon the question of the defendants' negligence, this evidence was directly contradictory. The jury found in favor of the appellant on this question. There is plenty of evidence in the record to justify a holding either way upon this question. Whichever way a jury might find upon this question, no trial or appellate court would be justified in holding that there was not evidence to support it. The solution of this question depends to a large extent upon which set of witnesses one is going to believe. The following is some of the evidence establishing the defendants' negligence: The motorman in charge of the street car involved in the collision testified that he did not look to his right (the direction from which the fire engine entered the intersection and where his view would be unobstructed for at least 200 feet), at the time he entered the intersection or at any other

time until he reached its center. At least thirteen witnesses testified that the street car proceeded forward into the intersection while the traffic signal was set at "stop". An ordinance of the city and county of San Francisco required street cars to obey these traffic signals, although fire apparatus answering an alarm, as was the case here, was expressly exempted therefrom. While the motorman claimed he did not hear the siren or bell of the oncoming apparatus, thirty-seven witnesses testified to their being sounded, and two of these witnesses were passengers in the street car. The motorman of another street car at the scene of the accident heard the rumble of the approaching apparatus. The speed of the street car was limited by ordinance to 15 miles per hour at the intersection. Two disinterested witnesses testified that the car was proceeding across the intersection at a speed of 25 miles per hour, or more. Thus, considering the evidence as a whole, in view of the finding of the jury upon closely disputed questions of fact, it cannot be said that it clearly establishes the fact that defendants were not guilty of negligence.

Now, upon the question of the contributory negligence of the plaintiff. This depends upon, first, whether or not the driver of the fire truck was negligent, and secondly, whether or not such negligence, if any, is imputable to appellant. Upon the first of these questions there was a sharp conflict of evidence. ▇ It cannot be said that the evidence considered as a whole was of a character to clearly establish the fact that the driver was guilty of negligence. Here again the question depends to a large extent upon which set of witnesses one is to take, bearing in mind, of course, that the jury saw the witnesses and found that the driver was not negligent. As stated before, there were 37 witnesses who testified that the siren and bell upon the fire engine were sounded; some of the witnesses testified that the speed of the apparatus did not exceed 15 miles per hour at the intersection. Even though its speed were in excess of that figure, speed alone is not negligence.

▇ But assuming that the driver was negligent, was this imputable to the appellant? No defense of imputed negligence was pleaded in this case. It therefore cannot be considered. "Imputed negligence, like contributory negligence, is a matter of defense. If the relationship between the driver of the vehicle and the plaintiff was such that his negligence would be imputable to her and bar her recovery, the burden

was upon the defendants to *allege* and prove such relationship. Plaintiff was not required to anticipate defenses.'' (*Bennett* v. *Chanslor & Lyon Co.*, 204 Cal. 101, 105 [266 Pac. 803].) (Italics ours.) Incidentally, the only evidence of joint or common operation of the fire truck by plaintiff and the driver contended for by respondents, is that it was the duty of the plaintiff to ring the bell, sound the siren and watch ahead for traffic. In *Adler* v. *Metropolitan St. Ry. Co.*, 84 N. Y. Supp. 877, relied upon by respondents, plaintiff and the driver of a fire patrol were both employed by the board of fire underwriters; he was sitting upon the same seat with the driver, ringing the bell, and was engaged in common employment with the driver, when the fire patrol and a street car collided, injuring the plaintiff. The court held that it could not be said as a matter of law that the negligence of the driver was or was not imputable to the plaintiff in that case. It being then, a question for the jury, the latter has, in the case at bar, decided that the plaintiff did not have such control over the driver as to make his negligence imputable to plaintiff. As said in *Ring* v. *Minneapolis St. Ry. Co.*, 173 Minn. 265 [217 N. W. 130], ''The plaintiff had no control over the fire truck; he had no authority over the driver of the truck and had nothing to say as to where it should go or how it should be driven or operated. The element of joint control was wholly lacking. The driver of the fire truck was selected by . . . the Captain of the fire company. . . . He went upon the truck, not in pursuance of any enterprise or undertaking of his own, but pursuant to orders and regulations of the fire department and of his superiors. Negligence in the conduct of another will not be imputed to a party if he neither authorized such conduct, nor participated therein, nor had the right or power to control it.'' This is true in the instant case, even though the appellant and the driver were both hosemen and alternated in the driving of the truck. There is no evidence that when one was driving the other had the right of control of the driver. Moreover, in order for the negligence of one to be imputed to the other there must be some relationship between them as to cause the application of the maxim, ''*Qui facit per alium facit per se.*'' (*Bryant* v. *Pacific Elec. Ry.*, 174 Cal. 737, 742 [164 Pac. 385].) ''There is usually some relation between persons on a joint enterprise, such as partnership, principal and agent, master and servant, or

some other kindred identity in order to constitute such community of enterprise and joint control over the operation of the automobile.'' (4 Blakefield Cyclopedia of Automobile Law & Practice, 615.)

Respondents contend that the negligence of the driver can be imputed to the other even though there be no contractual relation of principal and agent, master and servant or some such relationship existing between them, and cites a number of cases to support this view, such as *Stewart* v. *San Joaquin Light & Power Co.*, 44 Cal. App. 202 [186 Pac. 160] ; *Dowd* v. *Atlas T. & A. Service*, 187 Cal. 523 [202 Pac. 870] ; and others. However, an examination of these cases discloses that respondents are confusing two different rules of law. One, the doctrine of imputed negligence is as above set forth ; the other, is the question of plaintiff's own contributory negligence. This is exemplified by a guest in a car watching the driver take him into a known peril and doing nothing about it in the way of warning or objection, or where the passenger knows that the driver is doing something negligent but sits idly by making no effort to persuade the driver to cease the negligent act. There, it is not a case of the driver's negligence being imputed to the other, but is a case of the other being himself negligent, in which case, of course, he cannot recover. Any passenger in an automobile is bound to use ordinary care for his own safety and if he fails to do so he is guilty of negligence himself. ▮ So here, the driver's negligence is not imputable to plaintiff, but if plaintiff was himself negligent in failing to warn the driver within a reasonable time of the discovery by him of danger such negligence would be included within the defendants' plea of contributory negligence. Respondents ardently urge that the plaintiff was negligent in this respect, but here, again, it cannot be said that the evidence clearly shows that plaintiff was guilty in this respect. There is some evidence, possibly, upon which it could be said that such was the case, but on the other hand there is just as great weight of evidence to the contrary. So that it cannot be said as a matter of law that appellant was guilty of contributory negligence.

▮ The plaintiff has requested a new trial upon the issue of damages alone. He is entitled to such new trial upon that issue, but the question of limiting it to that issue alone is a very serious one. A limited new trial should not be granted,

where substantial justice requires that a new trial, if granted at all, should cover all the issues. (*Donnatin* v. *Union Hardware & Metal Co., supra*, at p. 12.) The verdict of the jury which found, in effect, that defendants were guilty of negligence and that plaintiff was free from contributory negligence and yet allowed damages which were grossly inadequate, furnishes convincing proof as said in the Donnatin case, *supra*, page 11, "that in order to reach an agreement, the verdict was the result of unwarranted concessions of convictions made by each of two opposing factions of the jury, one of which conscientiously believed that defendant should prevail in the action and the other equally conscientious in the opinion that plaintiff should recover damages commensurate with the injuries sustained. It is apparent, we think, that those jurors entertaining the opinion that defendant was not guilty of the negligence charged" (or, in our case, the additional issue that plaintiff was guilty of contributory negligence), "nevertheless agreed to surrender their views in consideration of other jurors consenting to the trifling award made. . . . It would work a grave injustice upon defendant to force it to a new trial of the issue as to damages only, with the issue as to liability, upon which no verdict other than in name had been rendered, forever closed against inquiry." Just how much the jury was influenced by the instructions upon imputed negligence it is impossible to say. It may well be that the jury did not believe there was any contributory negligence upon the part of the plaintiff, but some jurors might also have believed under the evidence, that the driver of the apparatus was negligent and that his negligence as a matter of law should be imputed to plaintiff, and in this mistaken belief they might have surrendered their convictions as to the amount of damages they should award. On the other hand, it is possible under the evidence, that some of the jurors believed that the driver was negligent and that plaintiff contributed proximately to the accident by, with knowledge of such negligence on the part of the driver and of the conditions constituting such negligence, failing to warn the driver or persuade him to stop or slow up, and such jurors surrendered their convictions in this behalf in exchange for a verdict for low damages. In view of this uncertainty and the fact that clearly something other than the evidence on the question of damages must have actuated the jury, or some of

them in arriving at such a low verdict, substantial justice requires that (as said in the Donnatin case, *supra,* p. 11), " . . . what is a just compensation the plaintiff should receive, if he is entitled to recover at all, can best be determined by trying the whole case before one judge and one jury instead of 'splitting it up' between different judges and different juries."

Inasmuch as the case is to be tried over again, it becomes unnecessary to discuss the other assignments of error made by the appellant.

The judgment is reversed and the cause remanded for a new trial upon all issues.

Tyler, P. J., and Knight, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 26, 1937, and an application by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 24, 1937.