[Civ. No. 17147. Second Dist., Div. Two. Dec. 5, 1949.]

SAMUEL E. WOODS et al., Respondents, v. JAMES EDWARD EITZE, JR., a Minor, etc., et al., Appellants.

Jones, Thompson & Kelly and Henry F. Walker for Appellants.

John F. McCarthy and Roy J. Brown for Respondents.

WILSON, J.—This action was brought to recover damages for personal injuries suffered by Gertrude Woods who was struck by an automobile driven by defendant Eitze, Jr., a minor. His parents are joined as defendants. After trial by a jury a verdict was rendered in favor of plaintiffs for the sum of $5,000 upon which judgment was entered. Plaintiffs moved for a new trial solely upon the issue of damages. Defendants moved for a new trial on all issues. The court granted plaintiffs' motion ''on the single issue of measure of damages on grounds of insufficiency of evidence to sustain amount of verdict and upon the inadequacy of the verdict.'' Defendants' motion for a new trial was denied. Defendants have appealed (1) from the judgment, and (2) from the order granting plaintiffs' motion for a new trial upon the issue of damages.

The accident occurred on December 12, 1947, about 6 o'clock p.m., at the intersection of Lakewood Boulevard and Harvey Way in Los Angeles County. It was dark at the time but the weather was clear. Lakewood Boulevard is 90 feet in width and extends northerly and southerly; Harvey Way is 40 feet wide and crosses Lakewood at right angles; Lakewood is divided along the middle by a concrete dividing strip 4 feet wide; adjoining the curb on the west side of Lakewood Boulevard is an oiled shoulder 20 feet in width; the space between

the oiled surface and the center dividing strip is paved with asphaltic concrete divided by a white line into two traffic lanes respectively 11 and 12 feet in width. The concrete dividing strip ends 30 feet south of the south curb line of Harvey Way as extended across Lakewood. The property line on the south side of Harvey is 10 feet south of the south curb line.

The only eyewitnesses to the accident were the two plaintiffs and the defendant driver of the automobile and the evidence is practically without conflict.

■ Mrs. Woods was on the southeast corner of Lakewood and Harvey Way with her 4-year-old child; Mr. Woods was on the southwest corner; Mrs. Woods took the child by the hand and started westerly across Lakewood to her husband; they stopped at or a few feet from the northerly tip of the dividing strip where they waited for a break in southbound traffic.

Mr. Woods testified he saw defendants' car about 300 feet to the north when his wife and child were on their way across the westerly half of the street; she was struck on or near the line between the oiled shoulder and the westerly southbound traffic lane; she did not run but took short steps; the last time he saw her before the impact she had stopped.

Mrs. Woods testified that when the northbound traffic cleared on the easterly half of the highway she crossed to the center of the street where she stopped about 2 feet north of the northern point of the dividing strip; she waited to let one or two cars pass; there was then no southbound traffic except defendants' car which was about 300 feet distant when she started from the center of the street to the west side; when she stepped into the lane in which the car was traveling and saw it was not slowing its speed she picked up her child and stepped back onto the asphalt surface; at that time the car was about 200 feet north and approaching the intersection—about even with the north curb line; it was in the oiled portion of the highway; at the time of the impact she was standing in the outer (westerly) lane of the main traveled southbound portion of the roadway and not on the oiled shoulder; when she stepped into the shoulder the southbound car was a short distance north of Harvey Way; when she saw the car was not slowing its speed she tried to get out of its way.

A state highway patrolman who arrived at the intersection after the accident testified he found 55 feet of skid, brush and broadside marks which started 21 feet south of the south

curb line of Harvey Way as extended across Lakewood and 25 feet east of the west curb line of Lakewood; the marks were on the asphalt roadway; they angled or arched to the left and stopped about 4 feet west of the dividing strip; he talked to defendant driver, who said he had been going south on Lakewood and when he first saw "these people" they were 50 or 60 feet ahead; that they ran out in front of him and he drove to the left trying to avoid them; that he was traveling about 35 miles an hour.

Defendant Eitze, Jr., the driver of the car, testified that he was 14 years old; it was customary for him to pick up his sister at Carson and Lakewood, an intersection south of the point of the accident, on her way home from work; he was driving his parents' automobile for that purpose at the time of the accident; his headlights were on low beam; to his knowledge there was no southbound traffic either in front or to the rear of his car; he was traveling in the middle lane—not on the oiled shoulder—one lane removed from the center dividing barrier; he first saw Mrs. Wood when he was at a point which he marked on the map about 50 feet north of the center line of Harvey Way and 90 to 100 feet north of the point of impact; at that time, said the witness, she was stepping off the north end of the center dividing barrier and was holding a child by the hand; he swerved slightly to the right toward the oiled shoulder intending to pass west of her and "I expected her to stay so I could go around her"; as he swerved he saw in front of his headlights a man [Mr. Woods] standing in the oiled shoulder; he turned left to avoid striking the man and at that time he saw Mrs. Woods crossing the lane "where I had no choice but to hit her and I slammed on my brakes as hard as I could and started skidding"; he first said Mrs. Woods was running and later said "I don't mean that I saw her running at the time . . . but she was in the motion of running, in a leaned forward motion"; his headlights went off her and picked up the man in the road; as he turned back she was still proceeding, then she stopped. He said he was possibly a little over a car length from Mrs. Woods at the time he applied the brakes; the car skidded, broadsided and came to a stop facing in a northeasterly direction.

The jury by its verdict in favor of plaintiffs found that defendant driver was guilty of negligence and Mrs. Woods was not contributorily negligent. By the order denying defendants' motion for a new trial the court agreed with and

confirmed the findings of the jury. The court did not err in the ruling.

Defendants do not question the right of the trial court in its discretion to restrict a new trial to a single issue but contend that in this case the court abused its discretion in making the order limiting the new trial to the issue of damages and that such circumscription of the trial will be prejudicial to them. In the case of *Keogh* v. *Maulding,* 52 Cal.App.2d 17 [125 P.2d 858], on which they rely, it was held that the new trial should not have been limited to the one issue. In that case the evidence was conflicting as to whether the plaintiff was under the influence of intoxicating liquor at the time of the accident, plaintiff received severe injuries and the verdict was for less than the amount the plaintiff had already expended for medical and hospital services and would be required to expend for further surgery. In *Shurman* v. *Fresno Ice Rink,* 91 Cal.App.2d 469 [205 P.2d 77], the court held that in view of plaintiff's injuries and the amount of her special damages the trial court was justified in granting a new trial by reason of inadequacy of the verdict, but because of other issues, including a prejudicial error in the rejection of important evidence offered by the defendant, the case should be retried upon all issues.

There is no analogy between the instant case and the cases relied on by defendants. There is no conflict in the evidence, as in the Keogh case—not even as to speed which is usual in such cases ; no reversible error occurred as in the Shurman case.

When a jury finds the defendant legally liable for damages but the verdict is for an amount so small in comparison with the expense incurred by the injured person that it is apparent that jurors who believed defendant was not negligent surrendered their opinions in exchange for the consent of other jurors to an award disproportionate to the plaintiff's out of pocket expense—plainly a compromise verdict—a new trial limited to the issue of damages should not be granted. (*Donnatin* v. *Union Hardware etc. Co.,* 38 Cal.App. 8, 11 [175 P. 26, 177 P. 845] ; *Bencich* v. *Market St. Ry. Co.,* 20 CalApp.2d 518, 528-9 [67 P.2d 398] ; *Wallace* v. *Miller,* 26 Cal.App.2d 55, 57 [78 P.2d 745].) However, the court in its discretion may grant a new trial on that issue alone when the sum awarded is substantial and to a certain extent compensatory though insufficient, but not so trifling in amount that it appears that the jury stultified itself by bargaining grossly inadequate damages for nonexistent liability (*Cox*

v. *Tyrone Power Enterprises, Inc.,* 49 Cal.App.2d 383, 390 [121 P.2d 829] ; *Hughes* v. *Schwartz,* 51 Cal.App.2d 362, 364 [124 P.2d 886] ; *McNear* v. *Pacific Greyhound Lines,* 63 Cal. App.2d 11, 15 [146 P.2d 34] ; *Tornell* v. *Munson,* 80 Cal.App. 2d 123, 126 [181 P.2d 112].)

 Mrs. Woods was seriously injured, having suffered fractures of several bones, rupture of the liver, concussion of the brain. The verdict was for $5,000. Plaintiff's medical and hospital expenses amounted to $3,583.90, leaving $1,416.10 for general damages. While this amount may be considered substantial the trial judge regarded it as inadequate compensation for Mrs. Woods' injuries. He heard the evidence and was in a position to know that time and money would be uselessly expended in a retrial of the issue of negligence in view of the absence of conflict concerning the facts relating to the accident, taking into account especially defendant driver's testimony as to his manner of driving. The court's discretion was properly exercised in granting the limited new trial.

There were no marked crosswalks at the intersection where the accident took place. Defendants contend that Mrs. Woods was not in an unmarked crosswalk as defined by section 85[1] of the Vehicle Code, that she should have yielded the right of way to the automobile (§ 562[2]) and that having failed to do so was guilty of contributory negligence.

 Section 562 does not prohibit a pedestrian from crossing a street outside a crosswalk. (*Genola* v. *Barnett,* 14 Cal.2d 217, 220 [93 P.2d 109] ; *Fuentes* v. *Ling,* 21 Cal.2d 59, 61 [130 P.2d 121].) In the latter case the court held that the question of plaintiff's contributory negligence is for the trial court to determine and its findings when supported by the evidence will not be disturbed on appeal. Although the duty of a pedestrian, while crossing a street other than in a

[1]Section 85. ''Crosswalk'' is either:

(a) That portion of a roadway ordinarily included within the prolongation or connection of the boundary lines of sidewalks at intersections where the intersecting roadways meet at approximately right angles, except the prolongation of any such lines from an alley across a street.

(b) Any portion of a roadway distinctly indicated for pedestrian crossing by lines or other markings on the surface.

[2]Section 562. (a) [Yielding of right of way to vehicles.] Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right of way to all vehicles upon the roadway.

(b) [Duty of driver to exercise care.] The provisions of this section shall not relieve the driver of a vehicle from the duty to exercise due care for the safety of any pedestrian upon a roadway.

regular crosswalk, to yield the right of way may call for a higher degree of care upon his part than would be applied to one crossing at a regular crosswalk, yet the question as to whether such care was exercised is one for the jury, unless he is so careless that it can be said that he was negligent as a matter of law. (*Brannock* v. *Bromley*, 30 Cal.App.2d 516, 524 [86 P.2d 1062].) Where a pedestrian plaintiff estimated that a car was 200 or 300 feet distant when he stepped into the street the contention made by the defendant driver that the plaintiff was guilty of contributory negligence as a matter of law is without merit. (*Lang* v. *Barry*, 71 Cal.App.2d 121, 124 [161 P.2d 949].)

In *Nicholas* v. *Leslie*, 7 Cal.App.2d 590 [46 P.2d 761], it is held that the rights and duties of the parties are the same, whether the plaintiff is just within or just without the boundaries of the crosswalk and that if the plaintiff had been within the boundaries of the crosswalk she would have been struck just the same because the defendant did not see her until it was too late to avoid striking her. The situation is similar in the instant case. Defendant Eitze, Jr., saw Mrs. Woods when he was approximately 100 feet distant from her; he did not slacken the speed of his car but depended on his ability to pass her by swerving to his right. Had Mrs. Woods been within the extended boundary lines of the sidewalk on Harvey Way she would have been struck since defendant driver did not apply his brakes until an instant before the collision—slightly more than a car length from her.

Furthermore, Mrs. Woods' presence outside the unmarked crosswalk, if she were outside, did not relieve the driver of the duty to exercise due care for her safety. (§ 562(b) quoted in the footnote.)

Defendants assign as error the giving of the following instruction: "(a) Yielding of right-of-way to pedestrian. The driver of a vehicle shall yield the right-of-way to a pedestrian crossing the roadway within any marked crosswalk or within any unmarked crosswalk at an intersection." They contend that this and other instructions were calculated to leave the impression that there was an unmarked crosswalk and that Mrs. Woods was crossing within it. Preceding the foregoing instruction the court gave an instruction requested by defendants defining "highway," "roadway," "sidewalk" and "crosswalk" in the language of the Vehicle Code and following it the court instructed the jury, also at the request of defendants, quoting verbatim section 562 of the Vehicle Code.

There is no error in the instruction complained of since (1) it did not intimate that Mrs. Woods was within the crosswalk, and (2) defendants themselves requested instructions with reference to crosswalks which were given by the court.

Defendants assign as error the admission in evidence of the driver's license issued to defendant Eitze, Jr., which contained the following language: "Privilege is hereby granted to operate motor vehicles registered to parent or employer to and from school or work or on business of parent or employer and otherwise when accompanied by and under immediate supervision of an adult, and subject to other restrictions hereon."

The complaint alleges that the driver was the agent of his codefendants and acting within the scope of his agency at the time of the accident. This allegation is denied by the answer. The agency of Eitze, Jr., for his parents having been placed in issue by the pleadings, the license was properly admitted in evidence in proof of the allegation. It authorized Eitze, Jr., to operate motor vehicles registered to his parent (1) to and from school or work, (2) on business of parent or employer, and (3) when accompanied by and under immediate supervision of an adult. He was not going to or from school or work, and he was not accompanied by or under the supervision of an adult. By reason of his license the only other condition under which he could lawfully drive alone was on business of his parents. If not so acting he was driving unlawfully. The license, therefore, was admissible for the purpose of proving his agency which defendants had denied.

The judgment is affirmed except as to the single issue of damages upon which a new trial was granted. The order granting a new trial upon that issue alone is affirmed.

Moore, P. J., and McComb, J., concurred.

A petition for a rehearing was denied December 20, 1949, and appellants' petition for a hearing by the Supreme Court was denied February 2, 1950.