[Civ. No. 21405.   Second Dist., Div. One.   May 15, 1956.]

SHERIL LE MURPHY, a Minor, etc., et al., Respondents, v. CORWIN B. WILSON, Appellant.

Ball, Hunt & Hart and Clark Heggeness for Appellant.

J. V. Malouf and Glen D. Lucas for Respondents.

FOURT, J.—This is an appeal from an order granting respondents a new trial upon the issues of damages only.

Virgil Murphy and his two minor children, Sheril Le and Janice Kae, brought an action against Corwin B. Wilson for personal injuries and property damage arising out of an automobile accident. The plaintiffs claimed general damages as follows: Sheril Le, $7,500; Janice Kae, $5,000; Virgil, $55,000. Virgil Murphy claimed special damages substantially as follows: $50 for repair of his car; $90 for loss of use of his car; $10 for medical services for the children; $392 for medical services; $1,000 for future medical services; $1,500 for loss of earnings and $4,800 for loss of future earnings.

Defendant denied that any negligence on his part caused the accident and affirmatively alleged that plaintiff Virgil Murphy was guilty of contributory negligence. The action was tried before a jury and Virgil Murphy proved undisputed special damages of $423.20 in medical expenses and $50 auto damages. Virgil Murphy was awarded damages in the sum of $142.50. No damages were awarded to either of the children.

Plaintiffs filed a notice of intention to move for a new trial wherein it was set forth that the motion would be made upon

substantially all of the statutory grounds and upon the grounds of the inadequacy of the damages. The motion was made and argued and the court granted the motion on the issue of damages only as to all plaintiffs on the grounds of the insufficiency of the evidence.

Appellant's sole contention is that the trial court abused its discretion in ordering a new trial upon the single issue of damages.

The rule is that the granting of a new trial limited to the issue of damages appropriately rests in the discretion of the trial court, but an abuse of that discretion is shown when the record discloses that the issue of liability is close, the damages are inadequate and there are other circumstances that indicate that the verdict was probably the result of a compromise of the liability issue. (*Clifford* v. *Ruocco*, 39 Cal.2d 327 [246 P.2d 651]; *Leipert* v. *Honold*, 39 Cal.2d 462 [247 P.2d 324, 29 A.L.R. 1185]; *Rose* v. *Melody Lane*, 39 Cal.2d 481 [247 P.2d 335]; *Cary* v. *Wentzel*, 39 Cal.2d 491 [247 P.2d 341]; *Hamasaki* v. *Flotho*, 39 Cal.2d 602 [248 P.2d 910].)

The facts of this case, as disclosed by the testimony, are substantially as follows: Virgil Murphy testified in substance that on October 1, 1953, about 8 o'clock p. m., he was driving his automobile westerly on Carson Street in Long Beach. His two minor daughters were with him. Carson Street is marked for two-lane traffic in each direction and runs generally east and west. Gundry Avenue runs generally north and south and intersects Carson Street at right angles. Murphy approached that intersection traveling about 25 miles per hour in the inside, westbound lane. He first saw defendant's car when it was west of the intersection and moving on Carson toward the intersection in the inside, eastbound lane about three-quarters of a block away. There was a car about a block ahead of Murphy in the outside westbound lane. There were no other cars in the inside westbound or eastbound lanes. He saw Wilson either come to a stop or slow down to a speed of less than 2 or 3 miles per hour at the west edge of the intersection. Murphy continued on and when he was about a quarter of a block from Wilson's automobile he concluded that Wilson was going to make a left-hand turn at the intersection to go north on Gundry Street. Wilson momentarilly stopped and Murphy continued on, and when Murphy was about 25 feet from the intersection he saw Wilson commence a left turn. Murphy applied his brakes but was unable to stop and the front of the Murphy

car struck the middle of the right side of the Wilson car. The collision occurred near the east edge of, but within the intersection. Wilson was knocked out of the driver's seat and his automobile went out of control. Murphy concluded after the accident that Wilson was intoxicated. Murphy did not seek medical attention immediately after the accident and continued working as a painter. He first saw the doctor on October 12, 1953. The doctor treated him for 14 months and he wore a back brace for five months. His uncontradicted medical expenses were $335 for the doctor, $57.50 for X-rays, and $30.70 for a back brace, or a total of $423.20. He claimed that the back injury was sustained in the accident and that he was unable to work for five weeks· during the summer of 1954. He claimed loss of earnings of $1,500, but part of the time he was in Iowa with his family. His work record showed that he worked continuously after the accident for at least 50 hours per week and earned almost $1,000 per month. He denied any back trouble before the accident. His back was worse at the time of the trial. He further testified that his daughters suffered bruises in the accident and that he paid a dentist $5.00 for a routine examination of Sheril Le in November of 1954.

Defendant Corwin Wilson testified that at the time of the accident he was on his way home from his work. Before dinner he had two bottles of beer and earlier a cocktail, but he was not intoxicated. He was driving easterly on Carson, and when one block west of the intersection in question he stopped for a traffic light. He then proceeded easterly in the inside lane at a speed of about 20 miles per hour. He gave a left turn signal as he approached the intersection and came to a near stop near the west edge of the intersection to permit a westbound car to pass. His speed was reduced as he entered the intersection so that he was barely moving. He shifted into second gear and started to make his left turn. At that time he saw the Murphy car which was about 150 feet from him in the inside westbound lane. After he completed the turn and began to travel north he looked ahead and just before the collision heard the sound of skidding tires. The front of the Murphy car struck the right side of his car. He was knocked out of the driver's seat and lost control of the car, which came to rest off the street, north of the intersection. He was shaken up and became extremely nervous.

Police Officer Alvin Hyatt testified that he arrived about 8:10 p. m. and investigated for the Long Beach Police Depart-

ment. He observed 20 to 30 feet of skid marks from the Murphy car leading up to the collision and brush marks from the point of collision to where the Murphy car came to rest. In his opinion the point of impact was 3 feet west of the east edge of the intersection and near the white line dividing the two lanes of westbound traffic. He concluded that the Wilson car was going north and the Murphy car was going west at the time of the impact. He believed Wilson was intoxicated.

Charles Murdock testified that he was driving eastbound on Carson in the outside lane. Before the accident he saw the Wilson car in front of him in the inside eastbound lane as it approached the intersection, and as he approached the intersection he saw the Wilson car slow down just west of the intersection and concluded that Wilson was going to make a left-hand turn at the intersection. He saw Wilson enter the intersection, slow down and then start to make a left-hand turn at the middle of the intersection. At the time of the impact he had passed the intersection and had to look back over his shoulder to see it.

Dr. Thorstenberg, M.D., testified that he first saw Murphy on October 12, 1953, at which time Murphy gave him a history of an automobile accident on October 1, 1953. The X-rays showed Murphy had congenital defects in his back before the accident. Murphy told him he was rejected from military service in World War II by reason of back deformity, but that he had no trouble with his back before the accident. The doctor concluded that Murphy had suffered a contusion of his chin, a whiplash injury to his neck, a low back sprain superimposed upon a preexisting spondylolisthesis and scoliosis of the back, and a possible scalenus anticus syndrome. He treated Murphy 14 months and believed that the accident had aggravated the preexisting condition of Murphy's back and that an operation was necessary to fuse the back. His fee for the operation would be $500 and the hospital expenses would be at least $500, and Murphy would be disabled for at least six months after the operation.

Dr. Herbert Carlson, M.D., testified that he examined Murphy for the Industrial Accident Commission on December 29, 1950, for an industrial accident occurring in 1947. Murphy told him, during the examination, that he had suffered and was suffering low back pain radiating into his lower left leg. He made an examination and took X-rays and concluded that Murphy had a preexisting scoliosis, spondylolisthesis and a

pedicle defect in his low back. He further concluded, at the time of his examination, that Murphy was suffering permanent disability as a result of these conditions and the 1947 accident. He did not examine Murphy after October 1, 1953.

Dr. Eyer, D.D.S., was the family dentist and he testified that he first saw Sheril Le after the accident on November 23, 1954, for a routine examination. He was told that she suffered a bruised lip in an accident about a year before. He took X-rays and found retarded root development which he believed was caused by a blow to her mouth. He admitted that this condition was caused by a blow after Sheril Le's permanent teeth had erupted. An examination three months later disclosed that this condition had disappeared. It was stipulated that at the time of the accident the child had her baby teeth.

William Murphy testified that he was a painting contractor and Virgil Murphy's employer. He substantiated Murphy's work and earnings record and stated that Murphy took five weeks off from work in August and September, 1954.

Neither Sheril Le nor Janice Kae testified and respondents called no doctor to testify as to their injuries.

From the record of this case it is readily determined that the issue of liability was close. Wilson stated that Murphy was 150 feet away when he started to make the left-hand turn in the intersection. The physical facts indicate that Murphy's car left 25 feet of skid marks and was still traveling fast enough at the time of the impact with Wilson's car to knock Wilson out of the driver's seat. The officer stated that the Wilson car was going north at the time of the collision. There was substantial evidence that Wilson had completed the turn to the left and that Murphy was not an immediate hazard when Wilson began the turn and that Murphy was guilty of contributory negligence. The making or not making of a hand signal is not particularly important here for the reason that Murphy admitted that he knew that Wilson was going to turn to the left.

Both respondents and appellant contend that the verdict was grossly inadequate. The doctor testified that he treated Murphy for 14 months. There was no dispute that his reasonable charges were $335, in addition to $57.50 for X-rays. Murphy bought a brace for $30.70 and suffered $50 property damage. The award of $142.50 gave no general damages and is less than the admitted specials.

In *Rose* v. *Melody Lane, supra,* 39 Cal.2d 481, it was said at page 489:

"When the jury fails to compensate plaintiff for the special damages indicated by the evidence, and despite the fact that his injuries have been painful, makes no award or allows only a trifling sum for his general damages, the only reasonable conclusion is that the jurors compromised the issue of liability, and a new trial limited to the damages issue is improper. (See *Hughes* v. *Schwartz,* 51 Cal.App.2d 362, 367-368 [124 P.2d 886]; *McNear* v. *Pacific Greyhound Lines,* 63 Cal.App.2d 11, 16 [146 P.2d 34]; *Adams* v. *Hildebrand,* 51 Cal.App.2d 117, 118-119 [124 P.2d 80].) A contrary conclusion is justified only when the evidence of defendant's negligence is 'overwhelming.' (Citing cases.)"

As stated in *Clifford* v. *Ruocco, supra,* 39 Cal.2d 327, at page 330:

"A failure to allow for undisputed special damages and loss of earnings is one circumstance which the courts have considered as being some indication of a compromise verdict. (See *Bencich* v. *Market St. Ry. Co.,* 20 Cal.App.2d 518, 529-530 [67 P.2d 398]; see also *Woods* v. *Eitze,* 94 Cal.App.2d 910, 915 [212 P.2d 12]; *Hughes* v. *Schwartz,* 51 Cal.App.2d 362, 368-370 [124 P.2d 886].)"

Also, as the court said in *Hamasaki* v. *Flotho, supra,* 39 Cal.2d 602, at pages 606-607: "A refusal to allow for undisputed special damages is usually convincing evidence that the jury failed to make a decision of the liability issue, and that circumstance has therefore been stressed in a number of appellate opinions. (See *Wallace* v. *Miller,* 26 Cal.App.2d 55, 56 [78 P.2d 745]; *Donnatin* v. *Union Hardware & Metal Co.,* 38 Cal.App. 8, 11 [175 P. 26, 177 P. 845].) In a particular case, however, gross inadequacy of unliquidated general damages may be just as convincing. Thus, in *Simmons* v. *Fish,* 210 Mass. 563, 571 [97 N.E. 102, Ann.Cas. 1912D 588], it was held that a verdict of $200 for the loss of an eye was a conclusive indication that the jury had compromised the issues of liability and damages. (See also *Schuerholz* v. *Roach,* 58 F.2d 32, 34 [$625 for loss of eye]; *Keogh* v. *Maulding,* 52 Cal.App.2d 17, 21 [125 P.2d 858] [verdict for $291.23 more than undisputed damages].)

"As a general rule, it is only when the verdict allows a substantial, even though inadequate, amount for general damages that it can reasonably be concluded that the jury's error related solely to the damages issue. (Citing cases.)"

■ There are present in this case other circumstances which indicate that the verdicts were a compromise and that the issue of liability was never actually determined by the jury. The jury deliberated for about five hours, from 3:42 o'clock p. m. to 8:11 o'clock p. m., and returned with a 9 to 3 verdict. The fact that the jury found in favor of each of the children and yet did not even award nominal damages indicates a compromise verdict.

During a colloquy between the court and the foreman of the jury at the time the verdicts were returned, the court attempted to ascertain if the verdicts were as the jury really intended. Among other things, the following was said:

"THE COURT: You have done that but you find that the plaintiff, in effect, that the plaintiff, Virgil Murphy, for instance, has sustained his case and in effect you say that means that you find that the defendant was negligent, that the plaintiff was not contributorily negligent but that he suffered no damages whatever as a result of the defendant's negligence.

"THE FOREMAN: It is our decision.

"THE COURT: Is that your intent?

"THE FOREMAN: Our decision does not constitute anything other than what is in our minds. It was merely a question of which verdict to sign to indicate our decision.

"THE COURT: Obviously, I can only go so far in determining that. It is up to you.

"THE FOREMAN: Yes, sir.

"THE COURT: But there are certain forms that you must follow. How can you say on the evidence that you find for the plaintiff, which you have done, you found that the plaintiff has sustained in the case of Virgil Murphy, the father of the children, you said in effect he sustained his case. That means that you find that he was not contributorily negligent, that the defendant was negligent, but that he suffered no damage whatever as a result. That there was no damage the proximate result of the defendant's negligence and that the plaintiff was not contributorily negligent as a proximate cause.

"THE FOREMAN: That is only true in the case of . . .

"THE COURT: I am not talking about the case of the one girl.

"THE FOREMAN: That is what I am talking about, sir.

"THE COURT: To all of you, have I made myself clear, or are you still confused?

"A JUROR: Still as confused as ever."

■ In this case the verdict unmistakably indicates that the jury had doubts either as to defendant's negligence in the premises, or doubts as to whether the present condition of Murphy was not due to some prior condition disassociated from the accident.

■ It was appropriately said in *Reay* v. *Beasley*, 49 Ariz. 362 [66 P.2d 1043, at page 1044]: "It is not enough that the issues of liability and damages may be separable. It should be quite clear that it will not give the one seeking the new trial of the issue of damages only an unjust and unfair advantage over his adversary. It would seem that when a verdict is for nominal damages when the admitted facts show that damages should be substantial if there is any liability, and when such verdict is by nine of the twelve jurors, three refusing to join in it, justice and fairness would require the retrial to be of the whole case. . . . Just why the nine jurors joined in such a verdict we do not know. . . . The jurors must have entertained very serious doubts as to how the case should be decided, and this doubt presumably extended to both liability and the amount of damages."

■ Murphy was entitled to a substantial award of damages or none at all. If the jury had done as they were instructed, namely, determine the matter of liability first, and then consider damages, the award to Murphy would obviously have been in excess of his special damages.

The order granting a new trial on the issue of damages only is reversed and the cause is remanded to the trial court with directions to vacate the judgment and order a new trial on all issues.

White, P. J., and Doran, J., concurred.