[Civ. No. 26275. Second Dist., Div. One. Oct. 10, 1962.]

VIRGINIA HAYNES et al., Plaintiffs and Respondents, v. ROBERT SPEER HUNT, Defendant and Appellant.

Morgan, Holzhauer, Burrows & Wenzer, William Marshall Morgan and Charles A. Lynberg for Defendant and Appellant.

Casey, McClenahan & Christensen for Plaintiffs and Respondents.

LILLIE, J.—Verdicts in favor of plaintiffs were returned by the jury in the within personal injury action. Claiming that the awards were inadequate, plaintiffs thereafter successfully moved for a new trial on the issue of damages only. Defendant appeals from the order granting such limited new trial. He contends that the trial court's ruling constituted an abuse of discretion since the issue of liability was close, the damages were substantially less than the claimed special damages, and other circumstances indicate that the verdicts probably resulted from a compromise of the liability issue. (*Rose* v. *Melody Lane,* 39 Cal.2d 481, 488 [247 P.2d 335].)

In view of the above claim, we summarize the facts disclosed by the record. The accident occurred in Las Vegas, Nevada, on October 17, 1958, at approximately 2:45 a. m. The weather was clear and dry. Plaintiffs were attempting to walk across Highway 91—south, in a marked crosswalk, when they were struck by defendant's car. Highway 91, at that point, contains six lanes marked for traffic—three northbound and three southbound, separated by a center island divider.

Plaintiffs, husband and wife, are residents of San Diego, California. They arrived in Las Vegas on October 15, and stayed at the Desert Inn. In the early evening of October 16, after resting most of the afternoon, they left their room and attended the dinner show at the Stardust Hotel. When the show ended, they visited with friends in the cocktail lounge for about an hour. Although Mr. Haynes stated that he had one drink during the dinner show, neither he nor his wife had anything additional to drink until they arrived at another cocktail lounge, the Silver Slipper, situated on the same side of the highway. At the Silver Slipper they met more friends; Mr. Haynes had two highballs and his wife had one.

When plaintiffs left the Silver Slipper for the return trip to the Desert Inn (located on the other side of the highway), they proceeded to the crosswalk in question approximately 100 feet to the north. There was testimony that the lights on the Desert Inn building cast a glow on the area of the crosswalk. According to Mr. Haynes, he and his wife crossed

the first half of the highway—pausing on the center island divider. One car, then about 200 feet away in the center lane, they permitted to pass; they then crossed the second portion of the highway. Defendant's car, when first observed by Mr. Haynes, was about 200 feet behind the car they allowed to pass—approximately 400 to 450 feet from the crosswalk. He testified that this distance was reduced by about 100 feet when he and his wife stepped off the divider. Plaintiffs never again saw defendant's car until the accident occurred. The bumper portion of defendant's automobile struck Mr. Haynes' left leg and then struck Mrs. Haynes; according to Mr. Haynes, she was "knocked the rest of the way across the road."

Defendant was likewise visiting Las Vegas—the complaint alleges that he is a resident of Redondo Beach, California. With his mother-in-law and sister-in-law as passengers, he was driving toward the center of Las Vegas to get a sandwich. As he approached the scene of the accident, his car was in the center of the three lanes—the traffic was light but, according to defendant's testimony, the illumination in the center of the highway was very poor. He estimated his speed at about 25 miles per hour. Immediately before the accident, he had looked away from the roadway; his mother-in-law screamed at him, and he focused his vision ahead. Plaintiffs were then 50 to 60 feet away. After the brakes were applied, his car decelerated to about 5 miles per hour. Shortly after the accident, he said to Mr. Haynes: "It is the first time I have ever been in Las Vegas, and I was so enthralled by the lights on the Desert Inn and the place across the street, so I just didn't see you." He also admitted telling the police: "Being unfamiliar with the area and being interested in the entertainment, I was looking at the billboards at the various motels and hotels, and I looked to my left at the sign over the New Frontier and whatever the entertainment space is that is next to that to see who was starring in their shows, and as I did so, one of the passengers in my automobile screamed, 'Look out.' "

The only other witness, whose testimony related to the circumstances of the accident, was a deputy sheriff who observed a skid mark, 39 feet in length, leading up to the left rear wheel of the defendant's car; from this he was able to determine that the vehicle had been traveling less than 35 miles per hour, which was the posted speed limit.

The jury awarded damages to Mr. Haynes in the sum of

$652.73; his wife was awarded $2,500. Although it appears to be disputed whether Mr. Haynes was injured at all, there was evidence that he had incurred and paid special damages in the total amount of $1,052.73. There is no dispute, however, that Mrs. Haynes sustained injuries. The evidence also indicates her special damages at the time of the trial aggregated $3,370.88; in addition, her doctor estimated that future medical expenses would amount to $600.

In *Rose* v. *Melody Lane, supra,* 39 Cal.2d 481, the court said at page 489: "When the jury fails to compensate plaintiff for the special damages indicated by the evidence, and despite the fact that his injuries have been painful, makes no award or allows only a trifling sum for his general damages, the only reasonable conclusion is that the jurors compromised the issue of liability, and a new trial limited to the damages issue is improper. [Citations.] A contrary conclusion is justified only when the evidence of defendant's negligence is 'overwhelming.' [Citations.]" Of crucial importance, therefore, is the question whether the liability here was "overwhelming." Although this issue, says defendant, "was in sharp and substantial conflict throughout the pleading and trial stages of the case," the quantum of liability in a given case is not necessarily measured by the quantum of conflict in testimony. Furthermore, we do not follow defendant's argument that "a substantial portion of counsel's argument was consumed by the issues of negligence and contributory negligence. . . ." Statements of counsel in argument (or otherwise) are not evidence and, unless in the form of a stipulation or admission, are not binding on the client (*Davis* v. *Franson,* 141 Cal.App.2d 263, 271 [296 P.2d 600]); it follows, therefore, that the importance attached by counsel to any particular issue in the case is not binding on a jury absent evidence warranting such appraisal of the claim.

Evidence of a defendant's negligence is said to be "overwhelming" when "There is no showing that any difficulty should have been experienced in establishing [such liability]. . . ." (*Crandall* v. *McGrath,* 51 Cal.App.2d 438, 440 [124 P.2d 858], cited in *Rose* v. *Melody Lane, supra,* p. 489.) We have concluded that the evidence of defendant's negligence is of that character, thus justifying plaintiffs' claim that the liability issue was not compromised; we do so in view of the approach to the problem in *Novak* v. *Dewar,* 55 Cal.2d 749 [13 Cal.Rptr. 101, 361 P.2d 709], which follows the reasoning in *Gray* v. *Brinkerhoff,* 41 Cal.2d 180 [258 P.2d

834]. Both were crosswalk cases and neither is inapposite. Both hold that failure to yield the right of way " 'constitutes a violation of the statute[1] and negligence as a matter of law in the absence of reasonable explanation for defendant's conduct.' " (*Novak* v. *Dewar, supra,* p. 752, quoting from *Gray* v. *Brinkerhoff, supra,* p. 184.) ▮ While it is true, unlike the situation in the cited cases, that plaintiffs did not keep the defendant's vehicle "under observation while crossing," they "had the right to assume that defendant driver would obey the law, drive in a reasonable manner, observe [their] right of way, and yield it." (*Novak* v. *Dewar, supra,* p. 752, quoting from *Gray* v. *Brinkerhoff, supra,* p. 186.)

▮ Defendant points out that plaintiffs upon arrival at the center island allowed the first (and unidentified) car to pass; since they judged this first car too close to permit of their safe crossing, simple calculation should assertedly have indicated to plaintiffs that when they stepped off the curb of the island, defendant's vehicle would then be in the same approximate position as the first car which, in deference to their safety, they allowed to pass; in other words, defendant's car "was an immediate and perceivable hazard." (*Shoemake* v. *Wilsey,* 43 Cal.2d 686, 688 [277 P.2d 17].) The following from the *Novak* case, *supra,* not only disposes of the above argument, but of defendant's claim that plaintiffs were guilty of contributory negligence: "The position of Johnson's car has no relevancy to plaintiff's conduct in crossing the street. Whatever the speed of defendant's car plaintiff was entitled to act on the assumption that it would not violate her right of way until she actually observed that it was doing so by making a left turn; and whether it was stopped at the intersection or approaching from 250 feet away plaintiff was equally entitled to assume that it would not violate her right of way. Whether plaintiff waited 15 seconds or stepped into the crosswalk immediately is also immaterial on the question of her con-

---

[1] The governing Nevada statute provides: "When traffic-control signals are not in place or not in operation, the driver of a vehicle shall yield the right-of-way, slowing down or stopping if need be to so yield, to a pedestrian crossing the roadway within a crosswalk when the pedestrian is upon the half of the roadway upon which the vehicle is traveling, or when the pedestrian is approaching so closely from the opposite half of the roadway as to be in danger." (Nev. Rev. Stats. 484.176.) Not having been advised that the statute has been judicially construed in Nevada in respect to the matters material here, we construe it as a like statute. (Cal. Veh. Code, § 21950, has been construed in *Novak* and *Gray* (see 45 Cal.Jur.2d, Statutes, § 166; *Vaughan* v. *Gideon,* 56 Cal. App.2d 158, 161 [132 P.2d 529]).)

tributory negligence. In either event she admittedly had the green light in her favor from the time she left the curb until she was struck by defendant's car." (*Novak* v. *Dewar, supra,* p. 753].) The fact that the accident in both *Novak* and *Gray* occurred at an intersection controlled by signals does not substantially distinguish those cases from the one at bar.

 Under the holding in these two cases, defendant also presented no reasonable explanation for his violation of the statute. In *Gray* v. *Brinkerhoff, supra,* the defendant's attention was diverted by a fast-moving car; here, however, the defendant was simply enthralled with the lights of the night clubs and looking at marquees rather than the roadway. As in the *Gray* case, "the evidence does not reasonably admit of any conclusion other than that defendant could have fulfilled his duty to look for pedestrians and could have seen plaintiff[s] if he had exercised ordinary care." (*Gray* v. *Brinkerhoff, supra,* p. 184.)

 As pointed out in *Rose* v. *Melody Lane, supra,* p. 488, there should also be "other circumstances" indicating a compromise before it can be said that the court abused its discretion in granting a limited new trial. An example of such "other circumstances" is found in *Leipert* v. *Honold,* 39 Cal. 2d 462 [247 P.2d 324, 29 A.L.R.2d 1185], where there were inquiries by the jurors, long deliberation and difficulty in arriving at a 9-3 verdict although the evidence on the issue of damages was practically without dispute. Another example is found in *Murphy* v. *Wilson,* 141 Cal.App.2d 538 [297 P.2d 22] ; in addition to the money discrepancy in that case there was evidence, from the judge's colloquy with members of the jury, of their confusion. Here, however, the verdict was unanimous, it was reached within two hours and so far as the record indicates, without any confusion in the minds of the jurors.

We must presume that the trial judge, in passing upon the motion, has weighed the evidence and the possibility of prejudice to the defendant by limiting the new trial. (*Leipert* v. *Honold, supra,* p. 467.) Under all of the circumstances, we cannot say that an abuse of discretion has been shown.

The order is affirmed.

Wood, P. J., and Fourt, J., concurred.