[Civ. No. 22649.   Second Dist., Div. One.   Apr. 9, 1958.]

ALICE C. ROCRAY, Respondent, v. PASADENA CITY
LINES, INC. (a Corporation), Appellant.

Ronald A. Burford for Appellant.

Elmer Low and Lester V. Peterman for Respondent.

LILLIE, J.—Defendant Pasadena City Lines, Inc., appeals from a $2,721.50 judgment in favor of plaintiff in her action for damages arising out of a bus accident. It is alleged in the complaint that she was a passenger waiting to board the defendant's bus; that the driver negligently failed to operate the motor bus in a careful and prudent manner with due regard to her safety and welfare as she boarded the vehicle,

by causing the doors to open and close several times striking her body; and that, as a proximate result of the defendant's negligence, she suffered injury to her right hand, wrist and arm. In addition to a general denial, defendant, in its answer, set out an affirmative defense, that plaintiff so negligently conducted herself while attempting to board the bus that the injuries, if any, she suffered were proximately caused by her own negligence.

The matter was tried before a jury, and based on its verdict, judgment was entered against the defendant in the sum of $2,721.50. The trial court subsequently denied defendant's motion for a new trial. From such judgment and the order denying its motion for new trial, defendant has appealed.

Since the order denying the motion for new trial is not appealable (Code Civ. Proc., § 963; *Pipoly* v. *Benson*, 20 Cal. 2d 366 [125 P.2d 482, 147 A.L.R. 515]; *Hamasaki* v. *Flotho*, 39 Cal.2d 602 [248 P.2d 910]) defendant's appeal therefrom must be dismissed.

On August 13, 1954, plaintiff, a prospective passenger, was waiting at a bus stop for defendant's motor bus. She testified that the bus stopped directly in front of her body with the doors facing her. The driver opened the doors and as five or six passengers alighted she took one step to the right to let them pass. As soon as they had descended she stepped back to the bus and faced the open doors. Standing directly in front of them, she reached out with her left hand to the partition on the left edge of the door to aid her in pulling herself onto the bus. As she stepped onto the first step and started to move her body into the bus the doors closed on her, striking the left side of her head and left arm. Immediately, the driver opened them and, as he did so, the folds of the door caught her left hand. She yelled, "My hand, my hand," and the driver, in order to release her hand, closed the door a second time, again striking the left side of her head. Quickly he opened the door and plaintiff's left hand was again caught in the door. A third time the driver closed the doors and reopened them, at which time plaintiff stepped into the bus. She said that it all happened so suddenly that she did not remember whether the doors had been in contact with the right side of her body. She does remember that her left hand was caught twice in the same place in the folds of the door, and that the edge of the door hit the left side of her head and arm. At the trial she testified that she did not

remember too clearly about her right side or what she did with her right hand, but certain prior testimony by way of deposition was read to the jury, wherein she gave the following responses to the following questions:

"Q. Was your (left) hand caught in approximately the same position each time? A. Yes.

"Q. . . . Were any other parts of your body injured, other than your left hand and your head, where it was struck by the door? A. Yes.

"Q. What other parts of your body? A. My right arm, my right hand.

"Q. And what struck or injured your right hand? A. My right hand, trying to help my left hand; the only way I can figure it out."

Plaintiff testified that the closing and opening of the doors occurred very suddenly, and so quickly that her body was struck in approximately the same place each time. She was so stunned and nervous she could not recall going home. She further testified that when she reached her home she was suffering from shock and was so "shaky" that she had to go to bed.

Before the accident plaintiff had no trouble with her right wrist, hand, elbow or shoulder. Within one-half hour after the accident she noticed swelling and felt pain in her right hand. The next day she developed pain in the right wrist, elbow and shoulder. Seven days after the accident, Mr. Burt Strain called her and at his request she went to his office to talk with him about the accident. She explained how it had occurred, complained of the pain and swelling in the right hand, and showed him her right hand and wrist. Mr. Strain sent her to Dr. Charles W. Rasmussen, whom she consulted the next day. He treated her right wrist and hand and put a splint on it. After three weeks he removed the splint and placed her entire right hand and wrist in a cast extending to the elbow, which he left on the arm for eight weeks. Subsequently, he treated her right hand, wrist, elbow and shoulder with injections and heat for nearly a year, after which he sent her to his assistant, Dr. Adolph A. Erickson, who performed surgery on the right wrist.

Plaintiff's left hand sustained only a small scratch, for which she did not seek recovery, nor does she claim any injury to the left side of her head or body.

Dr. Erickson, an orthopedic specialist, testified that he saw plaintiff about a year after the accident; that from her

history and his examination he diagnosed the condition of the right hand as epicondylitis, an irritation to the covering of the bone in the area where the extensor muscles of the hand and wrist originate; and traumatic neuritis; and that shortly after examining her he found a rupture of the extensor carpal sheaths of the right wrist and recommended surgical repair. On October 7, 1955, Dr. Erickson operated on plaintiff's right wrist. At the trial, he testified that it was his opinion that plaintiff sustained injuries to the lateral epicondylar region of the elbow, at the right elbow, and to the extensor tendon and sheaths at the dorsum of the right wrist, as a proximate result of traumatic force arising out of the accident. He further testified that no permanent disability would result from the epicondylitis, although he believed plaintiff would probably need more treatment. As to the back of the right hand, it was Dr. Erickson's opinion that the lack of sensation and pain would be permanent, impairing her future earning capacity.

Plaintiff, at the trial, complained of pain in the right elbow and a numbness through the back of the right hand and wrist. She testified to a loss of wages before trial, and the manner in which she is now disabled in her employment as a waitress.

Defendant at no time denied that the driver opened and closed the doors several times and that plaintiff's left hand was caught in the folds of the door. The driver, however, testified that when he stopped the bus, passengers alighted, and that although he looked through the open doors after the passengers had left, he did not observe the plaintiff. He shut the doors and prepared to leave, but looking up, he saw plaintiff approach. He then opened the door to allow her to enter. He did not remember seeing her run to the bus or hearing her knock on the closed door, although defendant's witness, Virginia Stapelton, who was seated on the bus, testified she heard plaintiff bang on the door.

Defendant, appellant herein, contends that the evidence was insufficient to justify the jury's finding of liability against it, and that the injuries complained of were the proximate result of the accident.

At the outset, it is conceded by appellant that it is a common carrier operating buses for the transportation of paying passengers. Although as a common carrier appellant is not an insurer of the absolute safety of its passengers, by law it has the duty to provide the utmost care and diligence

for the safe carriage of its passengers, must provide everything necessary for that purpose, and exercise to that end a reasonable degree of skill (Civ. Code, § 2100).

There is no evidence in the record that there existed any obstruction to the bus driver's view. Considering the entire record it was entirely reasonable for the jury to believe that the driver was negligent in not observing the presence of Mrs. Rocray as she was about to board the bus; or that he was negligent in closing the door on a portion of her body while she was not yet completely aboard or while she was outside standing on the first step with her hand up about to get on the bus; or that the driver was negligent in failing to observe her as she boarded the bus to see that she was safely aboard before the doors were closed; or if he did look in her direction he was negligently inattentive in not seeing her. From all of the circumstances surrounding the happening of the accident it was just as reasonable for the jury to have inferred negligence on the part of the defendant as it was for it to have inferred that through lack of ordinary care, the plaintiff alone proximately caused the injuries of which she complains.

This is a case in which the jury determined substantial questions of fact in favor of the plaintiff. It believed that the bus driver was negligent and there is ample evidence in the record to justify such a finding. On appeal, evidence and the reasonable inferences therefrom should be construed most strongly in favor of the respondent. When two or more inferences can reasonably be deduced from the facts the reviewing court is without power to substitute its deductions for those of the jury or trial court. (*Monastero* v. *Los Angeles Transit Co.*, 131 Cal.App.2d 156 [280 P.2d 187].)

The same must be said concerning the issue of proximate cause and damages. Although plaintiff has no clear memory of the door coming in contact with her right side, the evidence shows that the incident occurred suddenly and within a very short period of time. It is reasonable to believe that in the excitement of trying to free her left hand, the plaintiff did not clearly remember what she did with her right hand, which she thinks she used to aid her in freeing the left one. This most certainly would have been a normal reaction. If she used her right hand in such a manner, then it may be inferred that her right hand was either near the door when it closed or in the folds of the door when it opened, which explains the manner in which the right hand received

the injury which in Dr. Erickson's opinion was the probable result of traumatic force caused by the accident.

Having found from the record that the jury might reasonably infer from all of the evidence that the injuries to her right hand, wrist, arm and elbow, and the medical treatment rendered therefor were the proximate result of the accident, it can hardly be said that a judgment for $2,721.50 was excessive. Taking into account the evidence relating to plaintiff's pain and suffering, her extensive medical treatment for approximately a year and nine months, surgery on her right hand, her loss of wages, the injuries to her right hand, wrist, arm and elbow, and the permanent impairment of her earning capacity, it appears that the sum awarded by the jury was not only moderate but wholly justified.

Appellant's next contention arises out of counsel's reference to one Burt Strain in both direct examination and argument. It complains that the mention of Mr. Strain by counsel for plaintiff constituted misconduct prejudicial to the rights of appellant. Because appellant cites instances throughout the trial, we have carefully examined the trial record in this regard.

Mr. Burt Strain was claims manager for the Pasadena office of the Transit Casualty Company. Shortly after the accident he contacted the plaintiff and asked her to come to see him. She went to his office and told him how the accident occurred, showed him the swelling in her right hand, and complained to him of pain in the right hand, wrist and arm. He sent her to Dr. Charles Rasmussen who treated her and subsequently sent her to his assistant, Dr. Adolph A. Erickson, for surgery. She remained under Dr. Rasmussen's care for a little over a year. Mr. Strain arranged for the casualty company to pay for Dr. Rasmussen's services. Dr. Rasmussen was not called as a witness at the trial. At all times Mrs. Rocray was under the impression that Mr. Strain was an agent of the defendant Pasadena City Lines, Inc. Her counsel also believed that he was an employee of the defendant until he had proceeded with his opening statement to the jury.

Reference to Mr. Strain related only to his observation of plaintiff's condition seven days after the accident, his recommendation to her that she see Dr. Rasmussen, plaintiff's visit to the doctor and subsequent treatment by him, and her failure to seek recovery for the charge made by Dr. Rasmussen for his services. At no time was Mr. Strain identified as having any connection with the Transit Casualty Company, and al-

though he was present in the court room during the trial he was not called as a witness.

Appellant's chief complaint concerns counsel's references to Mr. Strain in his opening statement to the jury, during his direct examination of Mrs. Rocray, and in his closing argument.

In his opening statement, plaintiff's attorney advised the jury that within a short time after the accident Mr. Burt Strain "of Pasadena City Lines" got in touch with the plaintiff and asked her to come to his office; that she did so, and he told her to see Dr. Rasmussen; that she remained under Dr. Rasmussen's care for a little over a year; that during that period of time she had been in communication with Mr. Strain and did not obtain a lawyer until shortly before the one year statute of limitations had run. He further stated that payment for the services of Dr. Rasmussen were arranged and paid for by Mr. Strain, and that plaintiff was making no claim for medical expenses for services rendered by Dr. Rasmussen for that year. Objection to this statement was overruled by the court.

On direct examination, plaintiff's attorney asked her:

"Q. Before you went to Dr. Rasmussen, did you see anybody from the Pasadena City Lines? A. Yes, I got a call to come to see Mr. Strain."

Defendant's motion to strike was denied and objection to the question was overruled. Plaintiff then testified that she saw Mr. Strain; had certain dealings with him, and received treatment for her right hand and arm for about a year from Dr. Rasmussen; and explained to the jury in detail the kind of treatment given by him, including the splint on her right hand and subsequent cast on the right hand and elbow.

Mr. Strain's name was thereafter mentioned on several occasions by plaintiff, but without further identification, and then only to point up time and other instances. Later Mr. Strain, who was seated in the court room, was asked by counsel for the plaintiff to stand for identification only, when counsel, on cross-examination asked defendant's witness, Virginia Stapleton if she had talked to him before testifying. No evidence was submitted by either side as to the status of Mr. Strain.

In his closing argument, plaintiff's attorney commented to the jury: "There is sitting in the court room a Mr. Strain of the bus company . . . ." This statement was objected to and a motion to strike was made. In sustaining the objection and granting the motion, the trial court said: "I know of no

evidence that Mr. Strain is with the bus company. The jury will be admonished to disregard it.''

Appellant now complains that these references to Mr. Strain throughout the trial, together with other unrelated comments of counsel, were prejudicial to its rights and prevented it from having a fair trial.

The record discloses that at the time plaintiff's counsel first mentioned Mr. Strain in his opening statement to the jury, he believed that he was an employee and agent of the defendant and intended to prove it during the trial. He told the trial judge at the bench, outside the presence of the jury, that Mrs. Rocray had told him Mr. Strain was employed by the Pasadena City Lines. Counsel for the defendant told him this was not so and that he was actually an agent of the Transit Casualty Company.

However, in addition to giving plaintiff's counsel an opportunity during the trial to prove agency if he could, the trial court permitted reference to Mr. Strain in the opening statement on the theory that the jury had a right to an explanation of the reason she consulted Dr. Rasmussen, the complaints and symptoms she gave him within a week of the accident and for a year thereafter, the treatment he gave her, and the reason she was claiming no recovery for medical expenses for his services.

It can not be denied that plaintiff's counsel hoped the jury would realize that the reason he was not calling Dr. Rasmussen as a witness was that he had been retained and paid by the adverse party. No mention or inference was made concerning insurance, or to Mr. Strain's connection with insurance, and when counsel was told that Mr. Strain was with the casualty company, he followed the court's admonition and did not call him to identify him as its agent.

Perhaps under the circumstances the several references to Mr. Strain as being with the Pasadena City Lines, Inc., were not only unwise but wholly unnecessary, but in consideration of the entire record it cannot be said that any actual prejudice resulted to the defendant, particularly in light of the substantial evidence pointing to the liability of the defendant, and in view of the court's admonition to the jury to disregard counsel's reference to Mr. Strain as being with the bus line, on the ground that there was no evidence in the record to that effect. This does not appear to be such an extreme case that the final admonition and instruction by the court did not

sufficiently remove the prejudicial effect, if any, of counsel's reference.

All of these matters were considered at length by the trial court on defendant's motion for a new trial, which it denied after a hearing. In addition, the record discloses that from plaintiff's opening statement through his closing argument to the jury, the matter regarding Mr. Strain was brought to the court's attention innumerable times, most of which resulted in extensive colloquy between counsel and the court outside of the hearing of the jury. At all times during the trial the judge was aware of the nature of these matters and the defendant's claim of prejudice. It is obvious from his rulings and several refusals to declare a mistrial, that the trial judge did not feel that any prejudice resulted. Nor can we say after an examination of the entire record that the result would have differed in any way had not Mr. Strain's purported connection with the defendant been mentioned. (Cal. Const., art. VI, § 4½.)

The court in *Music* v. *Southern Pac. Co.,* 91 Cal.App.2d 93, at page 98 [204 P.2d 422], reiterated the general rule followed on review of these matters: "It is the well-established rule that a trial judge, who has witnessed all of the circumstances surrounding the alleged misconduct, is in a better position than an appellate court to determine whether or not the jury was prejudicially influenced, and its verdict the result of the asserted misconduct of counsel and 'his conclusion in the matter will not be disturbed unless, under all of the circumstances, it is plainly wrong.' "

In *Brown* v. *McCuan,* 56 Cal.App.2d 35, the court pointed out, at page 41 [132 P.2d 838]: "Whether counsel's references to compensation insurance, where the jury was admonished to disregard it each time, constituted prejudicial misconduct preventing a fair trial is a question of fact. . . . The trial judge is in a much better position to know whether a miscarriage of justice has taken place and his opinion is entitled to great weight in the absence of a clearly erroneous decision. The trial judge's determination must also be considered to be an adjudication of counsel's good faith. . . . when the case comes to us after the trial judge has denied a new trial urged upon these grounds and has thus found that the claimed misconduct was not prejudicial, the judgment must be affirmed unless there is no reasonable basis for such finding."

Even conceding that counsel's references to Mr. Strain

constitued misconduct, they still would not be cause for a reversal unless they had the effect of preventing the complaining party from having a fair trial. From the state of the evidence, we cannot say that they constituted such a situation during the trial as to materially affect the substantial rights of the party allegedly aggrieved.

The judgment is affirmed.

The attempted appeal from the order denying motion for a new trial is dismissed.

White, P. J., and Fourt, J., concurred.